Robert Victor BOYER, Appellant,

v.

Ernest S. PATTON.

No. 77-2421.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule
12(6) May 25, 1978.

Decided June 20, 1978.

Marc J. Sonnenfeld, Philadelphia, Pa., for appellant, Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel.

John A. Kenneff, Asst. Dist. Atty., Lancaster, Pa., for appellee.

Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Robert Boyer appeals from the district court's denial of his petition for habeas corpus relief, submitted on the ground that during his state trial for the crime of prison breach, his trial counsel was ineffective in failing to object to testimony elicited from a government witness regarding Boyer's silence at the time of his arrest. Boyer is now represented by different counsel. The district court declined to accept a United States Magistrate's recommendation that Boyer be granted the writ, finding instead that even if Boyer did not waive his rights by failing to appeal and even assuming his counsel's representation fell below the prevailing standard of adequacy, no harm resulted and Boyer was not entitled to habeas corpus relief. 436 F.Supp. 881 (E.D.Pa. 1977). Although we find merit in the district court's thoughtful analysis of these legal issues, we reverse.

### I.

Appellant Boyer was tried and convicted in the Court of Common Pleas of Lancaster

County, Pennsylvania, in 1973. *Commonwealth v. Boyer*, No. 723, 1972 Term (C.P. Lancaster, Crim. Div.). At trial, during which Boyer pleaded a defense of insanity, the prosecution elicited the following testimony from prison guard Robert Steffy:

Q. When you claimed [Boyer] at the front door did he make any statements to you?

A. Not more than I asked him how he got outside.

Q. Did he make a reply to that question?

A. No, he would not make a reply to it.

*Id.*, Trial Transcript at 6–7. Boyer's trial counsel did not object to admission of this testimony. In his charge to the jury, the trial judge summarized the guard's testimony as follows: "As the prisoner [Boyer] was being brought in, this witness said he asked him how he got outside and he said the prisoner did not reply." *Id.* at 32. Again, counsel did not take exception.

No direct appeal was taken from the judgment of sentence.[1] Boyer's subsequent petition under the Pennsylvania Post-Conviction Hearing Act, 19 P.S. §§ 1180–1 *et seq.*, was denied. During the hearing on this petition, Boyer's trial counsel agreed that the reference to Boyer's silence "might well be objectionable", and testified that he could not recall any specific reason for his failure to challenge its admission:

Q. This kind of testimony might well be objectionable, might it not?

A. Yes, sir.

Q. Is there any reason why you did not object to that testimony at trial?

A. No. I guess the reasonable—the primary reason at that time at the trial, it didn't seem important enough. Hindsight is better than foresight.

Q. I understand that. I was wanting to know if there was any reason you might have had to do with trial strategy which caused you not to object at the time.

A. I don't recall any, right now.

*Commonwealth v. Boyer, supra,* PCHA Hearing Transcript at 23–24. The Superior Court affirmed the denial of Boyer's postconviction petition, with a strong dissenting opinion by two judges. 237 Pa.Super. 341, 352 A.2d 431 (1975).[2] After the Supreme Court of Pennsylvania denied allocatur, the petition for federal habeas corpus relief ensued.

Three discrete issues command our attention. Did Boyer knowingly and intelligently waive his right to assert ineffective assistance of counsel by failing to take a direct appeal from his state conviction, and, if not, did the conduct of Boyer's trial counsel, in failing to object to the reference to Boyer's silence at time of arrest, deprive Boyer of the reasonably competent assistance of counsel? Finally, did the district court err in finding that no harm resulted even assuming that Boyer was deprived of the assistance of reasonably competent counsel?[3]

### A.

At his hearing before the United States Magistrate in April 1977, appellant explained that he had not appealed his state conviction directly for the following reasons: his trial attorney had refused to rep-

1. The trial court had informed Boyer of his right to appeal:

    Mr. Boyer, I have to inform you of your right to take an appeal from this judgment of sentence to the Superior Court within thirty days, that is your right. And if you don't have counsel or can't afford counsel, counsel will be furnished free of charge. You understand that to be your rights?
    *Commonwealth v. Boyer, supra,* Sentencing Transcript at 5.

2. Judges Hoffman and Spaeth asserted that where the alleged ineffectiveness of trial coun-

sel is apparent in the trial record, a petitioner is not precluded from raising the issue in a postconviction hearing solely because he failed to prosecute a direct appeal. 352 A.2d at 436.

3. In his initial habeas petition, appellant raised the additional contentions that his trial counsel had been ineffective in not adequately presenting his defense of insanity, and that the trial court had erred in placing the burden of proving insanity on him. The district court denied the petition as to these two claims on March 9, 1977. They are not raised on appeal.

resent him unless he paid more money; he was in an unstable mental condition when the trial judge explained the right to appeal; and he had inferred from a previous unsuccessful attempt to obtain appellate counsel that he would be unable to secure counsel for a direct appeal.

*Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), established the "deliberate bypass" standard for state prisoners' federal habeas claims. Drawing from the seminal decision on voluntary waiver in *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the *Fay* Court stated:

> If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default.

372 U.S. at 439, 83 S.Ct. at 849.

Utilizing these standards, the Magistrate in the present case determined that "due to [Boyer's] inexperience and confusion as to his right to appointed counsel even after conviction and sentencing, he refrained from requesting appointed counsel, and was left with no legal advisor whatsoever; and thus, it cannot be unequivocally stated that he deliberately failed to file an appeal to advance his case in another direction." Magistrate's Report, 436 F.Supp. at 890.

Subsequent to the Magistrate's report and recommendation, the Supreme Court decided *Wainwright v. Sykes,* 433 U.S. 72,

97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), in which it held that a state prisoner's failure to comply with a state rule requiring a contemporaneous objection to the introduction of an inculpatory statement precluded habeas corpus relief on a claim that the confession was involuntary, absent a showing of actual prejudice and cause for his failure to make a timely objection. No issue of ineffectiveness of counsel was raised in *Wainwright;* nor did the Court discuss whether the waiver standard under consideration was applicable to a failure to take a direct appeal. Indeed, in a concurring opinion, the Chief Justice suggested that *Fay's* deliberate bypass standard would continue to apply to failures to appeal, which involve "the exercise of volition by the defendant himself with respect to his own federal constitutional rights." 433 U.S. at 92, 97 S.Ct. at 2509.

■ Recognizing that *Wainwright* did not offer direct guidance for the present situation, the district court accepted the Magistrate's conclusions regarding Boyer's failure to appeal, and held that Boyer was not precluded from seeking federal habeas relief. We agree.

### B.

In considering the merits of Boyer's contention that he had ineffective counsel in his state trial proceedings, the district court properly drew upon our opinion in *Moore v. United States,* 432 F.2d 730, 736 (3d Cir. 1970), in which we stated that "the standard of adequacy of legal services as in other professions is the exercise of the customary skill and knowledge which normally prevails at the time and place." *See also United States ex rel. Green v. Rundle,* 434 F.2d 1112 (3d Cir. 1970). Whatever be the rule in other circuits, the standard of professional competence in this circuit has been settled for eight years.[4]

4. In a recent dissent sur denial of certiorari, Mr. Justice White reviewed the various standards utilized in challenges to competence of counsel:

> This petition presents a question of fundamental importance to the administration of

criminal justice in both the state and federal courts: what minimum standard of competence must be displayed by an attorney for a criminal defendant in order to satisfy the requirement of the Sixth Amendment that

Whether an accused's silence at the time of arrest may be used against him at trial has been an issue generating much discussion and adjudication. It has long been recognized in the law of evidence that a *"failure to assert* a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact." IIIA Wigmore, Evidence § 1042 (Chadbourn rev. 1970). It could be contended in the present case that Boyer's silence amounted to an affirmative admission that he escaped, or that it cast doubt on his testimony that he did not intend to escape. Where silence is equivalent to an assertion, that silence becomes relevant to a witness' testimony as a prior inconsistent statement if the assumed affirmation is inconsistent with the witness' present testimony. If offered against a party to the action, that silence is relevant as an admission, regardless of that party's testimony. In a criminal prosecution, however, there is obvious tension between the logical relevance of silence as affirmation and the constitutional privilege against self-incrimination.

In *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the Supreme Court held that although an actual statement obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), could not be used as substantive evidence against the defendant, it could be used for impeachment purposes as a prior inconsistent statement if the defendant testified in a manner inconsistent with that prior statement. After the decision in *Harris,* the courts of appeals divided on the question whether an affirmation by silence could be used for impeachment purposes when the defendant took the stand at his trial.[5] The Supreme Court resolved this conflict in *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), and *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In *Hale* the Court held that the defendant's post-arrest silence could not be used even for impeachment purposes. The Court reasoned, first, that the defendant's silence was not sufficiently probative of an inconsistency with his in-

the defendant receive the effective assistance of counsel?

Despite the clear significance of this question, the federal courts of appeals are in disarray. Three Circuits subscribe to the view that the representation of a defendant will be deemed adequate as a matter of constitutional law unless it was "such as to make a mockery, a sham or a farce of the trial." *United States v. Madrid Ramirez,* 535 F.2d 125, 129 (CA1 1976); *Rickenbacker v. Warden,* 550 F.2d 62, 65 (CA2 1976); *Gillihan v. Rodriguez,* 551 F.2d 1182, 1187 (CA10 1977). Four Circuits require, however, that defense counsel render "reasonably competent" assistance. *United States v. De Coster,* 159 U.S.App.D.C. 326, 341, 487 F.2d 1197, 1202 (1973); *United States v. Fessel,* 531 F.2d 1275, 1278 (CA5 1976) ("reasonably effective assistance"); *United States v. Easter,* 539 F.2d 663, 665–666 (CA8 1976) ("customary skills and diligence that a reasonably competent attorney would perform under similar circumstances"). The Third and Seventh Circuits have developed their own, apparently different, standards for determining whether effective assistance of counsel has been rendered to a defendant. *Moore v. United States,* 432 F.2d 730, 736 (CA3 1970) ("the exercise of the customary skill and knowledge which normally prevails at the time and place"); *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 641 (CA7

1975) ("assistance which meets a minimum standard of professional representation"). The Court of Appeals for the Ninth Circuit is internally divided. Compare *Saunders v. Eyman,* No. 75–3485 (CA9 April 18, 1977) ("farce or a mockery of justice") with *Cooper v. Fitzharris,* 551 F.2d 1162 (CA9 1977) ("reasonably effective assistance"), rehearing en banc granted.

*Maryland v. Marzullo,* —— U.S. ——, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978).

5. *Compare United States v. Semensohn,* 421 F.2d 1206, 1209 (2d Cir. 1970); *United States v. Brinson,* 411 F.2d 1057, 1060 (6th Cir. 1969); *Fowle v. United States,* 410 F.2d 48 (9th Cir. 1969); and *Johnson v. Patterson,* 475 F.2d 1066 (10th Cir.), *cert. denied,* 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124 (1973), *with United States ex rel. Burt v. New Jersey,* 475 F.2d 234 (3d Cir.), *cert. denied,* 414 U.S. 938, 94 S.Ct. 243, 38 L.Ed.2d 165 (1973); and *United States v. Ramirez,* 441 F.2d 950, 954 (5th Cir.), *cert. denied,* 404 U.S. 869, 92 S.Ct. 91, 30 L.Ed.2d 113 (1971). These cases are collected in Justice Marshall's opinion for the Court in *United States v. Hale,* 422 U.S. 171, 173 n.2, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). It should be noted that among those cases referred to and tacitly overruled by *Hale* is *United States ex rel. Burt v. New Jersey, supra.*

court testimony to warrant admission of the silence as impeachment evidence. 422 U.S. at 177, 95 S.Ct. 2133. In addition, the Court believed that admitting into evidence the defendant's post-arrest silence would be highly prejudicial. *Id.* at 180, 95 S.Ct. 2133. The decision in *Hale* applied only to federal prosecutions; *Doyle* extended the rule to state trials. If, as *Hale* and *Doyle* hold, a defendant's silence cannot be treated as a prior inconsistent statement for impeachment purposes, *a fortiori* it cannot be used substantively as an admission tending to prove the commission of the offense.

The district court in the present case noted that Supreme Court cases which came down *after* Boyer's state trial could have no bearing on this habeas corpus proceeding. 436 F.Supp. at 887 n.4, *citing Doyle* and *Hale.* Although we believe that a conscientious attorney would have been aware of the gestating law in this area, we agree that *Moore's* prescription of "knowledge which normally prevails at the time and place" does not necessarily place upon an attorney practicing in Pennsylvania in 1973 a strict duty to know what that law would become in its fruition.

We nevertheless must consider that *prior* to Boyer's trial the Supreme Court of Pennsylvania, in an interpretation of the Federal Constitution that was binding on the state trial court, had held: "Testimonial reference to an accused's silence . . . at time of arrest is a constitutionally impermissible violation of the accused's Fifth Amendment right." *Commonwealth v. Haideman*, 449 Pa. 367, 370, 296 A.2d 765, 766 (1972). Whatever may have been the state of the law in the federal courts, ad-

mission of the prison guard's testimony at Boyer's trial was without doubt reversible error under state law. Counsel therefore should have known that the testimony was objectionable.

Moreover, when he was questioned at the post-conviction hearing regarding his failure to object, Boyer's trial counsel admitted that the testimony "might well be objectionable" and could offer no reason for his actions.[6] We would like to believe that competent counsel practicing in the state and federal courts of this circuit do not share this attitude that, at best, is languid and uninspired and, at worst, negligent and constitutionally deficient. And holding counsel to a higher standard under these circumstances does not require him or her to be a crystal gazer; it merely requires him or her to take an adequately interested and informed position on the client's behalf. Accordingly, we determine that in this case the trial attorney's actions fell below the requisite knowledge and skill.

### C.

█ Our analysis cannot end with finding that the actions of Boyer's counsel fell below the required standard of competency. The district court held that because no harm resulted and the admitted testimony did not relate to an issue seriously in dispute Boyer was not deprived of effective assistance of counsel.[7] In *United States v. Crowley*, 529 F.2d 1066, 1070 (3d Cir. 1976), *cert. denied*, 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1977), we noted that: "this court has held that in certain circumstances ineffective assistance of counsel can be non-

---

**6.** Reduced to its essence, the test comes to this: at a minimum the court should inquire whether any normally competent lawyer would have objected to the testimony.

Objections to the admission of evidence, objections to the court's charge, decisions on what evidence to offer, decisions to make or withhold a motion for a mistrial, are all matters which, if counsel is to function in the adversary system, must be deemed to be within his implied authority.

This is not to say that all such decisions by counsel should be beyond review by a federal habeas court. It is to say, rather, that the

most relevant inquiry is the competence and integrity with which the agent attorney discharged his duty.

Gibbons, *Waiver: The Quest for Functional Limitations on Habeas Corpus Jurisdiction*, 2 Seton Hall L.Rev. 291, 305 (1971).

**7.** It is unclear whether the district court found that the counsel's representation did not fall below the average level of competence or that because no prejudice resulted Boyer's right to the effective assistance of counsel was not violated. *Compare* 436 F.Supp. at 887, *with* 436 F.Supp. at 889.

prejudicial, requiring the affirmance of a district court judgment in spite of such ineffective assistance. See *United States ex rel. Green v. Rundle,* 434 F.2d 1112, 1115 (3d Cir. 1970)." This case presents facts which demand the finding that Boyer was prejudiced as a matter of law.[8] Accordingly, we hold that the district court erred in concluding that Boyer was not deprived of effective assistance of counsel.

## II.

We take a moment to comment on the Commonwealth's unexplained failure to file a brief in this appeal. In this close case, the court would have been particularly assisted by information regarding the relevant standard of adequacy for attorneys in Lancaster County and adjacent counties in Pennsylvania. In failing to assist this court, the Commonwealth's attorneys, public officers ostensibly serving the people under an electoral mandate, have failed in their duty to serve their state and this court in the administration of justice. And it is ironic that this lackadaisical attitude toward vindicating the interests of their clients, the people of Pennsylvania, should manifest itself in the context of a case where relief is granted because defense counsel at trial did not properly vindicate the interest of his client. The pervasive professional listlessness in this case has been alleviated only by the imaginative and vigorous representation of the appellant by his present, court-appointed counsel.

We acknowledge that in many cases that come before us, application of the law to the facts is clear. Even in those cases, however, we are well served by briefs which elucidate both the law and the facts. Here, we received nothing from one side to the dispute. The court decisions regarding an accused's silence being what they are, and our standards for attorneys being what *they* are, we are compelled to interpret the absence of a Commonwealth brief as, if not a tacit agreement with, at least a disinclination seriously to contest appellant's position on the issues involved in this appeal.

The judgment of the district court will be reversed, and the cause remanded with instructions to enter an order granting the writ of habeas corpus unless a new trial is granted within a reasonable time.

---

**8.** The magistrate below found that this was "an instance of ineffectiveness which cannot be ignored." 436 F.Supp. at 890. The district court, conversely, found that because Boyer conceded that he was absent from the prison without authorization and the only adverse inference that could be drawn from Steffy's testimony as to Boyer's silence was that Boyer "had gotten outside of prison in a manner not authorized by prison officials," the adverse inference related to an issue not in dispute and, therefore, was not prejudicial. *Id.* at 888. To the contrary, we find that there was an adverse inference that could be drawn which would prejudice Boyer. The trial judge's charge reflects Boyer's defense that he did not intend to escape. The jurors could have drawn an obvious incriminatory inference from Steffy's testimony because they could conclude that Boyer's silence at the moment of arrest reflected a guilty mind—that Boyer "broke" out of prison and that he had intended to do so.