Vaughn Mario COOPER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–89–00319–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 22, 1990.

Discretionary Review Refused
June 27, 1990.

Randy Schaffer, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Katherine Haden and Shane Phelps, Asst. Dist. Attys., for appellee.

Before EVANS, C.J., and COHEN and HUGHES, JJ.

## OPINION

HUGHES, Justice.

This is an appeal from a conviction for possession of less than 28 grams of a controlled substance, namely cocaine. The appellant was found guilty, and the jury found the allegations of the two enhancement paragraphs to be true. Punishment was assessed at 40 years confinement.

We affirm.

On November 28, 1988, two Houston police officers stopped a Pontiac Trans Am for weaving in and out of its lane. Curtis Shoulders was driving, and the appellant was sitting in the front passenger's seat. The police observed a club fastened to the driver's belt when he stepped out of the car. The club was placed in the back seat of the driver's car while the officers tested the sobriety of the driver. After determining that the driver was not intoxicated, the police permitted him to get back in his car.

The officers determined at that point that the club was illegal, and decided to arrest the driver. They asked the driver to step out of the car, and then one of the officers shined his light into the car and observed the handle of a gun between the console and driver's seat. The appellant was removed from the car, because of his proximity to the weapon. As the appellant stepped out, one officer shined his flashlight into the car and observed a clear plastic bag lying in the passenger's seat. The bag contained a powder substance, and the appellant was placed under arrest. The officers found $1,100 in cash in the appellant's pocket.

After the arrests, the officers discovered a knife contained inside the club. The police also found a switchblade when they removed the gun from the car. The owner of the car was the appellant's wife, who allowed Curtis Shoulders to drive the car on occasion. An attempt had been made to insure the appellant as a driver of the car without his knowledge. However, the appellant did not have a driver's license.

## FIRST POINT OF ERROR

The appellant complains, in his first point of error, that there was insufficient evidence to establish that he intentionally or knowingly possessed cocaine. In reviewing this complaint, we are required to consider the evidence in the light most favorable to the verdict, and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,*

443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

To establish a defendant's unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised care, custody, and control over the substance; and (2) the accused knew that the substance possessed was contraband. *Deshong v. State*, 625 S.W.2d 327, 329 (Tex.Crim.App.1981).

■ It is not necessary to prove that the accused had exclusive possession of the narcotics. *Damron v. State*, 570 S.W.2d 933, 934–35 (Tex.Crim.App.1978). But, if the proof does not show that the accused was in exclusive control of the premises where the substance was found, the State must offer additional independent facts and circumstances that affirmatively link the accused to the contraband. *Wiersing v. State*, 571 S.W.2d 188, 190 (Tex.Crim.App. 1978).

An affirmative link can be established by showing additional facts and circumstances which indicate the accused's knowledge and control of the contraband. *Deshong*, 625 S.W.2d at 329. Facts that establish an affirmative link include the following examples: the narcotic was conveniently accessible to the accused, *Hahn v. State*, 502 S.W.2d 724, 725 (Tex.Crim.App.1973); and the contraband was found on the same side of the car where the accused was sitting, *Orosco v. State*, 164 Tex.Crim. 257, 298 S.W.2d 134, 136 (1957).

■ The appellant's theory was that the officers planted the cocaine in the car. The appellant testified the officers arrested him, searched him, placed him in the police car, and resumed searching the Pontiac. After five minutes, they returned and told the appellant that they found cocaine. The appellant claimed he did not know of the presence of the cocaine until the police informed him about it. The appellant further explained that he won the cash found in his pocket at the horse races.

However, an officer testified that he observed the bag of cocaine lying in the car seat as the appellant stepped out of the car. The officer testified as follows:

The door was already opened when he stepped out of the vehicle. I shined my light inside the vehicle and I observed that clear plastic bag lying with that powdery substance in it on the seat where he was seated.

\* \* \* \* \* \*

The drugs I referred to were right about here (indicating) toward the back of the seat where my finger is.

The officer also testified that the cocaine was on the same side of the car where the appellant was sitting. A console separated the two bucket seats in the vehicle. Therefore, the cocaine was conveniently accessible to the appellant. *Cf. Hahn*, 502 S.W.2d at 725.

A jury is entitled to accept one version of facts and reject another, or to reject any or all of a witness' testimony. *Speaker v. State*, 740 S.W.2d 486, 490 (Tex.App.—Houston [1st Dist.] 1987, no pet.). Conflicts in the testimony presented issues of fact and credibility for the jury to decide, not this Court. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, —— U.S. ——, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). After reviewing the evidence, we find that a rational trier of fact could have found that the appellant exercised care, custody, and control over the cocaine.

The appellant's first point of error is overruled.

### SECOND, FIFTH, AND SIXTH POINTS OF ERROR

In his second, fifth, and sixth points of error, the appellant complains of arguments made by the prosecutor during summation.

The areas of permissible jury argument encompass the following four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Albiar v. State*, 739 S.W.2d 360, 362 (Tex.Crim.App. 1987).

■ Error occurs when facts not supported by the record are interjected. How-

ever, such error is not reversible, unless, viewing the record as a whole, we can conclude the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts, harmful to the accused, into the trial. *Cannon v. State,* 668 S.W.2d 401, 404 (Tex.Crim.App.1984).

■ In his sixth point of error, the appellant argues that the trial court erred in allowing the prosecutor to argue at the punishment stage that the appellant was about to commit a violent crime when the police stopped the car.

> STATE: You can consider the loaded weapon, the stilleto. Did you see that thing? You can consider the stilleto. You can consider the club with the hidden knife. What were the men up to? No damn good. There was another victim out there that was probably saved because those officers stopped this man on November 28th.
> DEFENSE: Objection, Your Honor. Outside the record.
> COURT: Overruled.
> DEFENSE: Extremely prejudicial.
> (No response.)

The evidence showed that the weapons mentioned by the prosecutor were found on the driver and in the car. The prosecutor was entitled to summarize that evidence, and draw reasonable deductions from the evidence. However, there was no evidence that the appellant or the driver was about to commit a crime which would victimize someone.

The argument by the prosecutor invited speculation about the appellant's future criminal activities, which lacked foundation in the evidence. However, by stating that another victim was "probably" saved, the prosecutor conveyed the idea that he was speaking hypothetically. Therefore, the prosecutor did not inject specific new facts into the record.

Furthermore, the prosecutor may argue to the jury a plea for law enforcement. The statement, "[y]ou are all potential victims of people like [the defendants]," has been held to be a permissible plea for law enforcement. *Esparza v. State,* 725

S.W.2d 422, 427 (Tex.App.—Houston [1st Dist.] 1987, no pet.).

The comment made in this case was not reversible error. *See, e.g., Esparza,* 725 S.W.2d at 427.

■ In his second point of error, the appellant argues that the trial court erred in failing to declare a mistrial after the prosecutor argued that the defense counsel was paid not to believe police officers. During summation at the guilt/innocence phase, the prosecutor argued as follows:

> STATE: Now, one thing the Defense [sic] attorney harped on while talking to you was that he didn't believe the officers. Well, it's his job not to believe the officers. That's what he is paid for.
> DEFENSE: Object to what I'm paid to do.

The defense attorney's objection was sustained, and he preserved error by requesting and obtaining an instruction for the jury to disregard, and moving for a mistrial. The State argues that: (1) the complaint on appeal varies from the objection made to the trial court; and (2) the comment was a proper response to the defense counsel's argument that the police planted the cocaine in the car.

The appellant cites to a line of cases holding prosecutorial attacks on defense counsel to be reversible error.

We find that the comments in this case do not rise to the level of misconduct in those cases. *See, e.g., Bray v. State,* 478 S.W.2d 89, 90 (Tex.Crim.App.1972). In *Bray,* the prosecutor argued, "I shall be eternally grateful that you are the people that are my employers and not the likes of him and that I am not representing this sort of thing ... I am grateful that I don't have to make my living that way." *Id.* at 89–90. The defense counsel objected, and the court's only ruling was, "The jury heard it." The Court of Criminal Appeals held this argument to be reversible error, noting, however, that a reprimand by the trial court in the jury's presence would be a better solution towards ending this type of improper argument. *Id.*

In this case, the jury was instructed to disregard the State's comment. Moreover, the argument complained of was not of such an inflammatory nature that the impression produced in the juror's minds could not have been removed by the trial court's instruction to disregard. *See Gardner v. State,* 730 S.W.2d 675, 700 (Tex. Crim.App.), *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). Any error was harmless. Tex.R.App.P. 81(b)(2).

■ In his fifth point of error, the appellant argues that the trial court should have granted a mistrial after the prosecutor argued, during summation at the *punishment* stage, that the appellant's prior conviction for aggravated robbery meant that he had either injured the victim, used a deadly weapon, or scared someone to death.

> STATE: If you steal something from K–Mart, that's theft. That is a misdemeanor. If you steal something from somebody and you use force, it is robbery and that involves a victim. Every time you see this word robbery, read victim. When you read the word aggravated robbery, read injured victim or deadly weapon or somebody scared to death.
> DEFENSE: Outside the record and I object to it.

The defense counsel properly asked for an instruction to disregard, which was made, and a mistrial, which was denied.

The appellant cites *Walker v. State,* 610 S.W.2d 481 (Tex.Crim.App.1980) in support of his argument. In *Walker,* the prosecutor informed the jury, through cross-examination of a witness during the punishment phase, that the victim of the defendant's prior conviction for incest was his daughter. *Id.* at 482. This fact was not previously before the jury and was not contained in the judgment. The Court of Criminal Appeals reversed the judgment,

stating that the prosecutor improperly and deliberately ·injected new facts, and that the misconduct was clearly calculated to inflame the minds of the jury. The court concluded that the misconduct suggested the impossibility of withdrawing the impression produced on the jury, and that there was a reasonable probability that a different punishment would have been assessed had the information not been before the jury. *Id.* at 483–84.

Without determining whether the argument in this case was error, we find that the prosecutor's conduct did not reach the level of harmful error. The prosecutor did not inject specific new facts during his argument. He suggested that the appellant's prior convictions involved injured victims.

We overrule the appellant's second, fifth, and sixth points ·of error.

## THIRD POINT OF ERROR

In his third point of error, the appellant argues that the trial court erred in permitting the State to amend an enhancement paragraph of the indictment at the commencement of the punishment phase.

■ After the jury returned its verdict, the defense attorney asked the court to quash the first enhancement paragraph of the indictment. The indictment alleged that the appellant was convicted of aggravated robbery on April 23, 1980, when in fact, the appellant received a new trial and was convicted of the lesser included offense of robbery.[1] The State asked to amend the enhancement paragraph, and delete the date of the conviction and the term "aggravated."

The defense attorney objected that the State could not be allowed to amend the indictment, because the date and offense were material to the pleading. The motion to quash was denied.[2]

1. The indictment read as follows: "Before the commission of the offense alleged above (hereafter styled the primary offense), on April 23, 1980, in Cause No. 308580, in the 178th District Court of Harris County, Texas, the Defendant was convicted of the felony of aggravated robbery." The indictment was amended with lines drawn through the date "April 23, 1980" and the word "aggravated."

2. The appellant alleges on appeal that he was prejudiced because, if the prosecutor had not been allowed to amend the indictment, trial counsel could have proved the variance, and

Article 28.10(c) of the Texas Code of Criminal Procedure provides that an indictment may not be amended over the defendant's objection, as to form or substance, if (1) the amended indictment or information charges the defendant with an additional or different offense, or (2) the substantial rights of the defendant are prejudiced. Tex.Code Crim.P.Ann. art. 28.10(c) (Vernon 1989).

It is clear from the record that the appellant was not "prejudicially surprised," because he knew of the error in the enhancement paragraph. Therefore, even if the trial court erred, we find that the appellant has not shown that his substantial rights were prejudiced. *See Jones v. State,* 755 S.W.2d 545, 548 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

The appellant's third point of error is overruled.

FOURTH POINT OF ERROR

■ In his fourth point of error, the appellant argues that the trial court erred in admitting an order revoking probation because the State is not permitted to introduce proof of extraneous conduct not resulting in a final conviction.

The State offered a pen packet in cause number 296031 which contained an order revoking the appellant's probation for a prior robbery conviction. The order stated that the defendant violated the terms of his probation by committing the offense of aggravated robbery. The aggravated robbery mentioned in the order was the same offense which resulted in a conviction in cause number 308580, which was alleged in the first enhancement paragraph of the

indictment. However, the conviction was for the lesser offense of robbery.

The State argues that the appellant's objection was waived because he failed to make a specific objection, and because his complaint on appeal varies from the objection made at trial court.[3]

The following objection was asserted during the punishment phase:

DEFENSE: As to page 3, I would ask that I have no objection to the sentencing portion of page 3, and I do object to it being immaterial and irrelevant. I would like all references to the order of revoking probation be removed.

THE COURT: That's denied.

Without ruling whether the objection was sufficient to preserve review of the appellant's complaint, we find, beyond a reasonable doubt, that the admission into evidence of the order revoking probation did not contribute to the conviction or the punishment. Tex.R.App.P. 81(b)(2). The pen packet reflects that the aggravated robbery, which provided the basis for revocation of probation, was reduced to robbery, and was the same offense alleged in the first enhancement paragraph in the indictment. Thus, the order referred to an offense already before the jury for its consideration. *Cf. Blanton v. State,* 633 S.W.2d 903, 904 (Tex.Crim.App.1982) (unproved allegation of rape in motion to revoke probation inadmissible).

The appellant's fourth point of error is overruled.

SEVENTH POINT OF ERROR

The appellant complains in his seventh point of error that he was denied effective assistance of counsel.

thus, could have argued to the jury that they should not consider the prior conviction in assessing punishment. Further, trial counsel could have argued that the jury should find the appellant to be a second time offender, rather than a third time offender, which would have decreased the minimum punishment.

3. In *Hernandez v. State,* 599 S.W.2d 614, 617 (Tex.Crim.App.1980), trial counsel made the following objection to the introduction of pen packet into evidence:

I object on the grounds that the pen pack contains an extraneous offense on a non-final

conviction and should not be given to the jury for consideration. On those grounds we would object in that it is highly prejudicial to Mr. Hernandez in this particular case.

The court overruled the appellant's argument in the State's motion for rehearing, holding that the trial counsel's complaint was not specific enough to identify the document in the pen pack to which he objected.

In this case, the appellant specifically named the document he objected to, the motion to revoke probation, but he failed to state the grounds for his objection.

The standard of review for effectiveness of counsel is gauged by the totality of the representation of the accused. *Ex parte Duffy*, 607 S.W.2d 507, 516 (Tex.Crim.App. 1980). The constitutional right to counsel does not mean errorless counsel or counsel whose competency is judged by hindsight. Rather, the right to effective assistance of counsel means counsel reasonably likely to render reasonably effective assistance of counsel. *Ex parte Cruz*, 739 S.W.2d 53, 57–58 (Tex.Crim.App.1987). An isolated failure to object to certain procedural mistakes or improper evidence does not necessarily constitute ineffective assistance of counsel. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App.1984). Thus, to obtain a reversal because of ineffective assistance, the appellant must show that: (1) counsel's performance was so deficient that counsel was not functioning as the counsel guaranteed by the sixth amendment; and (2) there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

■ The appellant first complains that the trial counsel's failure to object to testimony regarding the appellant's post-arrest silence denied the appellant effective assistance of counsel and a fair trial.

The State elicited the following testimony from Officer Warren:

STATE: At any time until the point where the defendant was placed under arrest did he say anything to you?

WITNESS: No, sir.

STATE: Did he ever tell you those weren't his drugs?

WITNESS: No, sir.

STATE: Did he ever tell you or any of the officers at the scene in your hearing those were not his drugs?

WITNESS: No, sir.

The appellant argues on appeal that the use of post-arrest silence constitutes an impermissible violation of due process, citing *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The appellant relies on *Boyer v. Patton*, 579 F.2d 284, 289 (3rd Cir.1978), to show that the failure to object to this testimony constitutes ineffective assistance of counsel. However, the *Strickland* analysis must still be applied to the instant case, because *Boyer* was a pre-*Strickland* case.[4]

We find that the defense counsel's failure to object to the testimony regarding the appellant's post-arrest silence was part of the defense counsel's trial strategy. *See, e.g., Haynes v. State*, 727 S.W.2d 294, 299 (Tex.App.—Houston [1st Dist.] 1987, pet. dism'd). If the defense counsel had objected to this testimony, it would probably have focused the jury's attention on the fact that the appellant did not deny possession of the cocaine at the time of arrest. By waiving the opportunity to object, the defense counsel was able to present a different perspective of the situation.

During the defense counsel's direct examination of the appellant, he asked:

DEFENSE: After the officers brought the cocaine back to you, did you say anything to them?

APPELLANT: No, I didn't say anything to them.

DEFENSE: Did you say anything to anybody?

APPELLANT: Yes.

DEFENSE: Who did you talk to?

APPELLANT: To Curtis Shoulders.

DEFENSE: What did you say to him, if anything?

APPELLANT: I looked at him, I said, man, I don't believe this.

This response is consistent with the appellant's defense that he did not know of the presence of the cocaine, and that he was surprised to learn that the police found cocaine during their search of the car. The

4. In *Boyer,* the defense counsel failed to object to testimony by a prison guard that the defendant did not reply to the guard's question concerning how the defendant got outside. *Boyer,* 579 F.2d at 285. This question was apparently asked at the time of the defendant's arrest. The court found that the defendant was prejudiced as a matter of law, and held that the defendant was denied effective assistance of counsel.

testimony also supports the appellant's defense that the police planted the cocaine in the car. The jury would probably not expect the appellant to protest his innocence to the person who allegedly framed him.

We must also consider the appellant's complaint that the defense counsel failed to object to testimony that the driver of the car had been to prison for robbery and involuntary manslaughter. The following testimony was elicited during cross-examination of the appellant:

STATE: Isn't it a fact that he [Curtis Shoulders] has also been to the penitentiary for robbery?

DEFENDANT: Yes.

STATE: Isn't it also a fact that he has been to the penitentiary for involuntary manslaughter?

DEFENDANT: Yes.

Furthermore, the prosecutor asked the jury to consider this fact during summation of both the guilt/innocence and punishment phases.

The Court of Criminal Appeals, when reversing a conviction based on improper testimony about the character of the defendant's associates, has stated the following:

It is clear that one's character is no evidence of guilt. It should be even more obvious that the character of one's associates is no evidence of guilt, and we have held that such evidence should not be admitted. Indeed, it has been held that one may not even be impeached by the character of his associates.

(Citations omitted.) *Gant v. State*, 513 S.W.2d 52, 53 (Tex.Crim.App.1974).

While the failure of trial counsel to object to this argument would usually be considered error, the circumstances in this case warrant a finding that the defense counsel deliberately introduced evidence of Mr. Shoulders' prison record to support the defense theory. Part of the defense counsel's argument to the jury was that the appellant and his companion were "street-smart," and therefore, the appellant would

have fled the scene of arrest if he had been involved in illegal activity. Thus, the argument went, the appellant must not have known of the presence of the cocaine.

The defense counsel introduced the issue of Mr. Shoulders' prison record by asking the defendant, on direct examination, whether he and Mr. Shoulders had been in the penitentiary.[5] The appellant answered that Mr. Shoulders had been in the penitentiary on two previous occasions.

This information supports the defense theory and could have been calculated to suggest that Mr. Shoulders was the owner of the cocaine.

We find that the trial counsel's assistance was effective. The defense counsel filed pre-trial motions, and made effective objections throughout the course of the trial. Although he arguably made two errors, the defense counsel elected to allow into evidence testimony regarding the defendant's post-arrest silence and his companion's prison record as part of his trial strategy. After considering the appellant's defense, we do not find that the result of the proceeding would have been different if the trial counsel had objected to these two lines of inquiry.

The appellant's seventh point of error is overruled, and the judgment is affirmed.

COHEN, J., dissents.

COHEN, Justice, dissenting.

The question in this case is whether a defendant may be found guilty beyond a reasonable doubt of intentionally and knowingly possessing cocaine, when the only evidence of possession is that he was a passenger in a car owned by someone else and driven by a third person, and a baggie containing 1.6 grams of cocaine was found toward the back of the seat he occupied.

I would hold that this case is controlled by *Humason v. State*, 699 S.W.2d 922 (Tex. App.—Houston [1st Dist.] 1985), *aff'd*, 728 S.W.2d 363 (Tex.Crim.App.1987). In *Hu-*

5. The defense counsel could hardly be expected to object when the State subsequently cross-examined the appellant and commented during arguments about the testimony which defense counsel chose to introduce.

*mason*, the Court of Criminal Appeals declared:

> Mere presence in the vicinity of a controlled substance has *never* been sufficient to establish joint possession.

728 S.W.2d at 366–67 (emphasis added).

There is nothing but mere presence in the vicinity of a controlled substance to support this conviction. This case has many similarities to *Humason*, including:

(1) there was no evidence that appellant owned the car;

(2) there was no evidence that appellant had exclusive control of the car;

(3) there was no evidence that appellant made furtive gestures;

(4) there was no evidence that appellant tried to escape or resisted arrest;

(5) there was no evidence that appellant was intoxicated or under the influence of drugs;

(6) there was no evidence that appellant made incriminating, false, or inconsistent statements;

(7) there was no evidence of any distinctive odor of contraband;

(8) there was no evidence of drugs on appellant's person or elsewhere in the car; and

(9) there was no evidence of appellant's fingerprints on the baggie.

As this Court observed in *Humason*, these factors, when present, have served to establish an affirmative link, and their absence has frequently led to reversal. 699 S.W.2d at 924.

Moreover, the evidence here is weaker in at least three significant aspects than that declared insufficient in *Humason*. First, Humason was driving his vehicle, a clear sign of control; appellant was not driving. Second, Humason was the sole occupant of his vehicle; the car here contained two people, appellant and the driver. Third, the evidence in Humason did not show who owned the vehicle; the evidence here showed that appellant did *not* own the vehicle; his wife did. Appellant admitted he had driven the car on occasion, but that does not distinguish this case from *Humason*, where the driver's exclusive control

and sole occupancy when arrested were not enough to justify affirmance.

When arrested, appellant had $1,100 in cash in his pocket. He testified, without contradiction, that he had won the cash at horse races in Louisiana. I do not understand the majority opinion to hold that possession of $1,100 in cash is an affirmative link to the cocaine. No case cited in the majority opinion makes such a holding. Indeed, this Court held to the contrary on very similar facts in *Thomas v. State*, 762 S.W.2d 721, 722 (Tex.App.—Houston [1st Dist.] 1988, no pet.). In *Thomas*, $1,900 in cash was not a sufficient link to justify affirmance. Chief Justice Evans concurred in the reversal

> because there was no proof showing that the vehicle belonged to or had been in appellant's possession for such a period of time and under circumstances that would affirmatively link him to the contraband. Indeed, the evidence shows that the vehicle was leased to another party.

*Id.* at 724. The defendant in *Thomas* was both the driver and the sole occupant of the car. Thus, *Thomas* was arguably a stronger case for affirmance than the instant case.

In *Baltazar v. State*, 638 S.W.2d 130 (Tex.App.—Corpus Christi 1982, no pet.), the court reversed where the defendant drove a car with a passenger, and cocaine was found on the dashboard. The defendant in *Baltazar* was also carrying a "sizeable amount" of cash on his person. *Id.* at 131. The court held:

> It is true that the area of the automobile in which the substance was found, i.e., on the dashboard, was convenient to appellant and rendered it easily accessible to him. This one circumstantial link, however, is not sufficient.

*Id.* at 132.

In *McBride v. State*, 780 S.W.2d 823 (Tex.App.—San Antonio 1989, no pet.), the facts were similar to *Humason*, except that, as here, the defendant was not driving. The court noted this difference and declared:

The evidence here is weaker than that declared insufficient in *Humason*, since there is no evidence in this case that appellant was driving the truck shortly before the cocaine was found.

*Id.* at 825. The same is true in this case.

When arrested, the defendant in *McBride* was the sole occupant of a truck, and cocaine was found on the seat next to him, under some papers. As in this case, the court noted there was no evidence that McBride owned the truck, and the cocaine was not in plain view. There being no other incriminating evidence, the court quoted *Humason:*

> Without some evidence excluding the equally reasonable hypothesis that [defendant] was unaware of the presence of the cocaine, the trier of fact could not conclude beyond a reasonable doubt that [defendant] knowingly possessed the cocaine.

*McBride,* 780 S.W.2d at 824.

Finally, in *Copeland v. State,* 747 S.W.2d 14 (Tex.App.—Houston [1st Dist.] 1988, no pet.), this Court unanimously reversed, even though the panel, speaking through Chief Justice Evans, agreed with the State that the marijuana was in plain view, the defendant admitted he knew of it, and it was "easily accessible" due to its location under his seat. *Id.* at 16. *Copeland* seems to be a stronger case for affirmance than the present case, but it was reversed.

In my opinion, there is no significant distinction between *Humason, McBride, Baltazar, Thomas, Copeland,* and this case.

The majority opinion relies on *Hahn v. State,* 502 S.W.2d 724 (Tex.Crim.App.1973). *Hahn* is distinguishable because (1) the defendant drove the car, (2) the defendant admitted his exclusive recent possession of the car while driving from South Carolina to Texas, and (3) the defendant admitted the two passengers had no knowledge of the car's contents. In short, Hahn had much more control over his vehicle than appellant was shown to have over his wife's vehicle in this case. *Orosco v. State,* 164 Tex.Crim. 257, 298 S.W.2d 134 (App. 1957), is also distinguishable; in fact, this court distinguished it in *Humason.* *See* 699 S.W.2d at 924. Orosco was charged with possession of marijuana, and an expert testified that marijuana was an intoxicant, that Orosco was intoxicated, and that Orosco's intoxication was caused by marijuana. 298 S.W.2d at 135. Obviously, there is no such evidence in this case.

I would sustain the first point of error, reverse the judgment of conviction, and reform the judgment to reflect an acquittal. *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).