**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3165
_____

WILLIAM J. KEMP,
                              Appellant

v.

SUPERINTENDENT HUNTINGDON SCI;
THE ATTORNEY GENERAL OF THE COMMONWEALTH OF PENNSYLVANIA
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-19-cv-01366)
U.S. District Judge:  Hon. Matthew W. Brann
_____

Argued October 4, 2023
_____

Before: SHWARTZ, MATEY, and FISHER, <u>Circuit Judges</u>.

(Filed:  October 18, 2023)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

1

David R. Fine
Jonathan Vaitl [ARGUED]
K&L Gates
17 N Second Street
18th Floor
Harrisburg, PA 17101

Counsel for Appellant William J. Kemp[1]

Martin L. Wade [ARGUED]
Lycoming County Office of District Attorney
48 W Third Street
Williamsport, PA 17701

Counsel for Appellees Superintendent Huntingdon SCI and Attorney General Pennsylvania

Ronald Eisenberg
Office of Attorney General of Pennsylvania
1600 Arch Street
Suite 300
Philadelphia, PA 19103

Counsel for Appellee Attorney General Pennsylvania

SHWARTZ, Circuit Judge.

William Kemp appeals the order denying his request for habeas relief under 28 U.S.C. § 2254 based on his claim that his trial counsel was ineffective for failing to object to the prosecutor's comments about his post-Miranda silence. For the reasons that follow, we will affirm.

---

[1] The Court commends David Fine, Esq. and John Vaitl, Esq. for their excellent work as pro bono counsel. Attorneys who act pro bono fulfill the highest service that members of the bar can offer to the Court and the legal profession.

I

A

In February 2012, Kirsten Radcliffe had a disagreement with her boyfriend, Michael Updegraff, at a bar and decided to walk home. After getting lost, she knocked on a door, Kemp answered, and Kemp offered to drive her home. When they arrived at Radcliffe's house, Radcliffe invited Kemp inside, where Kemp encountered Updegraff and Updegraff's friend, Thomas Schmitt. Updegraff became angry upon seeing Kemp and asked him to leave. A scuffle ensued with Updegraff and Kemp pushing each other both inside and outside the house. Updegraff testified that Kemp eventually walked toward his car, and Updegraff turned back to the house. Schmitt, however, walked in Kemp's direction. Updegraff heard a car door open, followed by gunshots, and saw that Kemp had a gun and that Schmitt had been shot. Updegraff, then fought with Kemp to get control of the gun. Radcliffe exited the house and joined the fight. Several neighbors called 911. The police responded to the scene and took Kemp to the hospital to treat injuries he sustained during the fight.

While Kemp was being treated, he told the doctors that he had been taking a girl home and "everything went sideways." SA 167. He did not ask why he was in handcuffs. Williamsport Detective Raymond Kontz then administered a gun residue test, during which Kemp asked, "I'm not going home tonight am I," SA 168, indicated that he was nervous, asked whether he had shot someone, and stated that he had a .45 caliber

3

handgun.  At that point, Agent Kontz read Kemp his Miranda rights, and Kemp agreed to continue speaking with him.  Kemp responded coherently to Agent Kontz's questions, but when Agent Kontz asked him whether he remembered shooting anyone, Kemp got upset and repeatedly responded with "you think I shot him" and "you think I did."  SA 169-70.

At trial, Kemp testified that he ended the conversation with Agent Kontz when the doctors gave him a shot of morphine.  SA 256.  The prosecution sought to impeach this testimony with the following cross-examination:

> Q. . . . and Agent Kontz then told you that he wouldn't ask you anymore questions, and that Agent Kontz would then conclude the interview.  Now isn't it more accurate to tell the jury then that that's the reason why the interview ended?
> A. Because he said he would leave?
> Q. Because you wanted a lawyer.
> A. Did I just state that in your statement? I'm not sure if I understood your question, it went too far.
> Q. How did your gun get out of the vehicle and get shot? It was at this time that Kemp said, I think I need a lawyer, I'm scared, I need someone who's going to have my best interest at heart, I don't think you guys do, I think this is a good time to stop talking.  Agent Kontz then says, I then concluded the interview.  That's why the interview ended.
> A. If I said that after I had been hit up with the morphine at the ER, then yeah I must have said that.

SA 261.  The judge then instructed the jury that, "[w]ith respect to the request for the attorney[,] [y]ou can only consider that in deciding whether or not the defendant is credible.  You cannot consider that for any other purpose."  SA 261.  However, the judge instructed the jury that it could consider Kemp's decision "not to talk . . .  for other

4

purposes, which will or may not be argued by the attorneys in closing argument." SA

261. Concerning this statement, the prosecution argued in its closing statement that

> [Kemp] attempts to change the topic and ultimately answers only, quote, you think that I did; you think that I shot him. And when he's pressured on it, did you shoot him, he is always giving the same non-answer, you think that I did. Until the fourth time it's asked, how did your gun get out of your vehicle and get shot? And it is at that point that he refuses to answer any more questions and ends the interview. That is consciousness of guilt.

SA 326. Defense counsel did not object to this statement or request any curative

instructions.[2]

B

The jury rejected Kemp's claim of self-defense and convicted him of third-degree

murder, aggravated assault, recklessly endangering another person, and possessing an

instrument of a crime, and the trial court sentenced him to twenty-to-forty years'

imprisonment. The Superior Court affirmed, Commonwealth v. Kemp, No. 993 MDA

2014, 2015 WL 7078886 (Pa. Super. Ct. June 8, 2015), and the Pennsylvania Supreme

---

[2] Following the summations, the judge provided the following instruction:

> The [prosecutor] argued during his final argument that there were a series of statements and/or conduct made by the Defendant representing consciousness of guilt. He indicated that he didn't ask questions at the hospital, that he gave certain statements to the police regarding not going home, that he was nervous and anxious. With respect to those types of examples, if you believe this evidence, you may consider it as tending to prove the Defendant's consciousness of guilt.

SA 334.

Court denied Kemp's petition for an appeal, Commonwealth v. Kemp, 131 A.3d 490 (Pa. 2016).

Kemp then filed a pro se petition under Pennsylvania's Post-Conviction Relief Act ("PCRA"), which asserted, among other things, that his trial counsel was ineffective for failing to object to the prosecutor's "numerous references to [Kemp's] silence after his arrest, as well as his request for an attorney," and failing to request adequate jury instructions on the right to remain silent. App. 44-45. Kemp was appointed counsel who filed an amended petition, which did not include the argument relating to the prosecutor's reference to Kemp's post-Miranda silence. The PCRA court denied the amended petition, Commonwealth v. Kemp, 63 Pa. D. & C.5th 429 (2017), the Superior Court affirmed, Commonwealth v. Kemp, 185 A.3d 1132 (Pa. Super. Ct. 2018), and the Pennsylvania Supreme Court denied Kemp's petition for an appeal, Commonwealth v. Kemp, 191 A.3d 746 (Pa. 2018).

Kemp then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which asserted nine claims for relief, including the claim that his trial counsel was ineffective for failing to object to the prosecution's comments about his post-Miranda silence. The District Court concluded that this claim was procedurally defaulted because Kemp had not raised it before the state court, and the default was not excusable. Kemp v. Superintendent of Sci-Huntingdon, No. 4:19-cv-01366, 2021 WL 4743678, at *3 (M.D. Pa. Oct. 12, 2021). The Court then considered and denied Kemp's non-

6

defaulted claims.  Id. at *4-8.

We granted a certificate of appealability as to Kemp's claim that his "trial counsel was ineffective in failing to object to or move for a mistrial based on the prosecution's comments on [Kemp's] silence and invocation of rights under Miranda v. Arizona, 384 U.S. 436 (1966), during the interrogation performed by Agent Kontz."  App. 1.

## II[3]

We need not decide whether Kemp's ineffective assistance of counsel claim is procedurally defaulted, or whether default should be excused, because Kemp's claim fails on the merits.  See, e.g., Bronshtein v. Horn, 404 F.3d 700, 728 (3d Cir. 2005) (holding it unnecessary to determine whether there was procedural default because "the claims in question lack merit").  To demonstrate that his trial counsel was ineffective, Kemp must show that his counsel's performance: (1) fell below an objective standard of reasonableness under prevailing professional standards, and (2) prejudiced him. Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

Kemp claims that his trial counsel's performance was objectively unreasonable because he failed to object to references to his post-Miranda silence that violated Doyle v. Ohio, 426 U.S. 610 (1976).  Under Doyle, "the use . . . of [a defendant's] silence, at the

---

[3] The District Court had jurisdiction under 28 U.S.C. § 2254.  We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(c)(2).  Because the state courts did not adjudicate Kemp's ineffective assistance of counsel claim, and the District Court did not hold an evidentiary hearing, our review is plenary.  Baxter v. Superintendent Coal Twp. SCI, 998 F.3d 542, 546 (3d Cir. 2021) (citations omitted).

time of arrest and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." Id. at 619; see also id. at 618 (explaining that Miranda warnings contain an "implicit" assurance that "silence will carry no penalty"); Boyer v. Patton, 579 F.2d 284, 288 (3d Cir. 1978) ("[A] defendant's silence . . . cannot be used substantively as an admission tending to prove the commission of the offense.").

As the prosecution now concedes, its summation clearly violated Doyle by directly connecting Kemp's post-Miranda silence to his consciousness of guilt. Despite this clear violation, trial counsel did not object, and the trial court failed to provide a curative instruction immediately after the prosecutor mentioned Kemp's silence. Moreover, the court's earlier instruction informing the jury that it could consider Kemp's decision "not to talk" for "other purposes," SA 261, implied that his silence could be used to infer consciousness of guilt. See Hassine v. Zimmerman, 160 F.3d 941, 949 (3d Cir. 1998) (concluding there was a Doyle violation where the prosecutor commented on the defendant's silence during questioning and in closing, and the trial court gave no curative instructions). This instruction also went without objection.

Because the prosecution committed an obvious Doyle violation, trial counsel's failure to object to the prosecution's statements or to the jury instructions fell below an objective standard of reasonableness. See Boyer, 579 F.2d at 288 (concluding counsel

8

was deficient where he failed to object to <u>Doyle</u> violation).[4]  Kemp thus satisfies the first prong of <u>Strickland</u>.

Kemp cannot demonstrate, however, that his counsel's failure to object to the <u>Doyle</u> violation caused him prejudice.  Under <u>Strickland</u>, Kemp "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 694.  The possibility that the result could conceivably be different is not enough.  <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 112 (2011) ("The likelihood of a different result must be substantial, not just conceivable.").  Here, the prosecution's evidence undermined Kemp's claim of self-defense.  Four neighbors and Updegraff testified that Schmitt was not attacking or threatening Kemp when he began firing the gun, and that Kemp had an opportunity to retreat.[5]

---

[4] Kemp also argues that Agent Kontz's direct examination, in which he testified that Kemp gave him evasive responses (such as "you think I did") to his repeated question, "did you shoot him," constituted a <u>Doyle</u> violation.  Appellant's Br. at 5-6, 22.  However, Agent Kontz only testified as to what Kemp actually said, and did not comment on his silence.  Thus, there was no <u>Doyle</u> violation.  <u>See</u> <u>Anderson</u>, 447 U.S. at 408 (explaining that "[s]uch questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving <u>Miranda</u> warnings has not been induced to remain silent").

[5] These facts make our case distinguishable from <u>United States v. Lopez</u>, 818 F.3d 125 (3d Cir. 2016), where the jury was faced with competing accounts from the defendant and the arresting officers, and there were no neutral witnesses.  In that situation, we concluded that the defendant's credibility was "integral to his defense," and "the Government's repeated references to his post-Miranda silence diminished his credibility," causing him prejudice.  <u>Id.</u> at 131.  Unlike in <u>Lopez</u>, this instant case does

9

The only evidence Kemp provided to contradict that testimony was his own account, which lacked credibility for several reasons unrelated to his refusal to answer all of Agent Kontz's questions. First, his testimony contained several gaps and did not explain how he ended up shooting Schmitt more than once. Second, Kemp's behavior before he was Mirandized, such as his failure to ask why he was in handcuffs or state that he had acted in self-defense, and his post-Miranda statements, such as his repeated response of "you think I did" to Agent Kontz's question "did you shoot anyone," demonstrated consciousness of guilt. Cf. Hassine, 160 F.3d at 958 (holding Doyle violation was not prejudicial where the defendant's testimony did not "present[] a strong counter to the state's evidence"). Finally, the impermissible reference to Kemp's silence was brief and made in conjunction with several other indications of consciousness of guilt such that it was effectively cumulative. See Brecht v. Abrahamson, 507 U.S. 619, 639 (1993) (holding Doyle violation was harmless where it comprised "less than two pages of the 900-page trial transcript" and, "in view of the State's extensive and permissible references to petitioner's pre-Miranda silence," the violation was "in effect, cumulative").[6]

---

not present any "he said/she said" testimony. Rather, four neighbors and Updegraff provided testimony that was consistent in material ways and different from Kemp's account.

[6] Although Brecht and Hassine addressed whether a Doyle violation constituted harmless error, Strickland's prejudice test is equivalent to Brecht's harmless error test. Preston v. Superintendent Graterford SCI, 902 F.3d 365, 382 (3d Cir. 2018).

Thus, based on the evidence against Kemp, the fact that his account was inconsistent with that of every other witness, and the brief nature of the <u>Doyle</u> error, Kemp cannot show a "reasonable probability" that, absent trial counsel's failure to object to the <u>Doyle</u> violation, the verdict would have been different.

## III

For the foregoing reasons, we will affirm.