Affirmed and Memorandum Opinion filed September 11, 2003
















Affirmed and
Memorandum Opinion filed September 11, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00438-CR

____________

 

JOSE LUIS YBARRA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

_______________________________________________

 

On Appeal from
the 23rd District Court

Brazoria County, Texas

Trial Court
Cause No. 34,313

 

_______________________________________________

 

M E M O R A
N D U M   O P I N I O N

            Appellant Jose Luis Ybarra appeals
his conviction for possession of marijuana weighing between five and fifty
pounds.  Appellant argues that: (1)–(2)
the evidence is legally and factually insufficient to show he knew there was
marijuana in the gas tank of the car he was towing; (3) the prosecutor made an
improper comment during opening statement that deprived appellant of a fair and
impartial trial; and (4) the State violated appellant’s right to a speedy
trial.  We affirm.








I.  Procedural and Factual Background

 

 class=Section3>

            Appellant
was driving a truck, with a car in tow, on a public highway when a police
officer stopped him.  Appellant was
arrested after he failed to provide a driver’s license and proof of
insurance during the traffic stop.  The
police officer noticed that appellant and the three other men in the truck
appeared nervous.  Another officer
noticed that the bolts on the gas tank of the car being towed looked as though
they had been removed recently.  Police
then called for a dog trained to alert to narcotics.  When the narcotics dog arrived on the scene,
it indicated there were narcotics in the gas tank area of the car appellant had
been towing.  Police found 15.3 pounds of
marijuana in the gas tank of the car.

            Appellant was charged with
possession of marijuana, weighing between five and fifty pounds.   The jury found appellant guilty and assessed
punishment at ten years’ confinement in the Texas Department of Criminal
Justice, Institutional Division.

II.  Issues Presented

Appellant presents the
following issues for appellate review:

    (1)–(2)       Is
the evidence legally and factually sufficient to prove appellant intentionally
or knowingly possessed the marijuana found in the gas tank of the car appellant
was towing? 

(3)       Was appellant denied a fair and impartial trial by
the prosecutor’s allegedly improper comment made during the State’s opening
statement?

(4)       Was
appellant’s right to a speedy trial violated?

 

III.  Analysis and Discussion 

A.        Is the evidence legally sufficient to
support appellant’s conviction?

            In his first issue, appellant argues
the evidence is legally insufficient to prove he intentionally or knowingly
possessed the marijuana found in the gas tank of the car he was towing.  Appellant specifically complains that the
evidence does not affirmatively link him to the marijuana and, therefore, no
reasonable jury could have concluded beyond a reasonable doubt that appellant
knew about the marijuana in the gas tank.

            In evaluating a legal-sufficiency
challenge, we view the evidence in the light most favorable to the
verdict.  Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  We
may not overturn the jury’s verdict unless it is irrational or unsupported by
proof beyond a reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex.
Crim. App. 1991). 
The jury, as the trier of fact, “is the sole
judge of the credibility of the witnesses and of the strength of the evidence.”
 Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999).  The jury may choose to believe or disbelieve
any portion of the witnesses’ testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). 
When faced with conflicting evidence, we presume the trier
of fact resolved conflicts in favor of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). 
Therefore, if any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt, we
must affirm.  McDuff v. State,
939 S.W.2d 607, 614 (Tex. Crim. App. 1997).  The question is not whether a rational jury
could have entertained a reasonable doubt of guilt, but whether it necessarily
would have done so.  Swearingen v. State, 101 S.W.3d 89, 96 (Tex. Crim. App. 2003). 
Moreover, it is not necessary that all facts point directly or
indirectly to the defendant’s guilt, if the combined and cumulative effect of
all incriminating circumstances point to his guilt.  Linton v. State, 15 S.W.3d
615, 619 (Tex. App.—Houston [14th
Dist.] 2000, pet. ref’d). 

            To establish the offense of unlawful
possession of a controlled substance, the State must prove the charged
individual “intentionally or knowingly” possessed a controlled substance.  Brown
v. State, 911 S.W.2d 744, 747 (Tex. Crim. App.
1995).  Possession is intentional or
knowing when an accused has (1) exercised actual care, custody, or control of
the substance, and (2) known that the substance was contraband.  Id.  The control over the contraband need not be
exclusive, but can be jointly exercised by more than one person.  Cude v. State, 716
S.W.2d 46, 47 (Tex. Crim. App. 1986).  However, when an accused is not in exclusive
control of the contraband, any conclusion 
that he exercised control over it must be supported by additional
independent facts and circumstances affirmatively linking him to the
contraband.  Id.  Circumstantial evidence is sufficient to
prove possession as long as the evidence affirmatively links the accused to the
contraband by showing his connection with 
it was more than fortuitous.  Brown, 911 S.W.2d at 747.

            Affirmative links are established by
a totality of the circumstances.  Hyett  v.
State, 58 S.W.3d 826, 830 (Tex. App.—Houston [1st
Dist.] 2001, pet. ref’d).  In assessing affirmative links, Texas courts
have considered many  factors, including:
the amount of contraband found, whether the amount was
large enough to indicate the accused knew of its existence, the proximity of
the accused to the contraband, whether the accused had convenient access to the
contraband, conflicting statements given about relevant matters by occupants of
a vehicle, and conduct of the accused indicating a consciousness of guilt.  See
Valencia v. State, 51 S.W.3d 418, 423 (Tex. App.—Houston [1st Dist.] 2001,
pet. ref’d) (finding that large bag of cocaine,
easily accessible in hatchback of car, and suspicious behavior constituted some
evidence of affirmative links); Corpus v.
State, 30 S.W.3d 35, 38 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d) (finding that appellant’s furtive gestures supported
an inference of guilt); Gilbert v. State,
874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d) (finding that cocaine and razors discovered in plain
view on seat of vehicle within appellant’s reach were affirmative links); Cooper v. State, 788 S.W.2d 612, 614
(Tex. App.—Houston [1st Dist.] 1990, pet. ref’d)
(finding affirmative links when officer observed clear plastic bag in the seat
passenger had just occupied). None of these factors is necessarily
determinative and, when examining the affirmative links, it is not the number
of factors present that is important, but the logical force they have in
establishing the offense.  Gilbert, 874 S.W.2d at 298.  Because knowledge is subjective, it usually
must be inferred in the absence of an admission of guilt by the accused.  McGoldrick v. State, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). 

            Though appellant argues the State
failed to affirmatively link him to the marijuana in the gas tank, the record
contains sufficient evidence of affirmative links. At the time of the traffic
stop, appellant was traveling with two of his brothers, Augustine Ybarra and
Oscar Ybarra, and a third man, Paul Reed. 
Appellant and the other three men in the truck appeared nervous when the
police talked to them.  See Fields v. State, 932 S.W.2d 97, 104
(Tex. App.—Tyler 1996, pet. ref’d) (finding
affirmative links when appellant and driver appeared nervous and failed to make
eye contact).  Appellant did not have a
driver’s license or proof of insurance. 
None of the other men in the truck presented a valid photo
identification or proof of insurance. 
When asked his name, appellant lied to the police, telling them his name
was “Gustav Popaco.” 
See Coonradt
v. State, 846 S.W.2d 874, 876 (Tex. App.—Houston [14th Dist.] 1992, pet. ref’d) (giving false name to officer during traffic stop
was an affirmative link to cocaine found in car).  Appellant admitted his real name only after
the police arrested him and his fingerprints revealed his true identity.  Moreover, the location of the contraband — in
the gas tank of the car — also tended to link appellant to the narcotics.  In order to conceal the marijuana in this
location, the gas tank of the car had to be removed and the record strongly
suggests appellant was the only occupant of the vehicle that was an
automobile  mechanic.[1]  

            Appellant’s brothers’ accounts of
appellant’s role in towing the marijuana-laden car differed in important
respects.  Most notably, the brothers did
not agree as to who knew about the marijuana in the gas tank or about who put
the marijuana in the gas tank.  Both
brothers testified that the original plan was to transport the marijuana from
Brownsville, Texas, to Pearland, Texas, in the car, but that those plans were
derailed when the car broke down in Sarita,
Texas.  Both brothers testified appellant
appeared nervous and lied to the police officer about his identity because he
believed there were outstanding warrants for his arrest.

            Oscar Ybarra pleaded nolo contendere to
possession of marijuana charges stemming from this incident.  At appellant’s trial, Oscar testified that
appellant was not in the car when it stopped running in Sarita;
Oscar, Augustine, and Reed were its only occupants. According to Oscar’s testimony,
when the car broke down in Sarita, Augustine called
appellant, who was then in Pearland, to come to Sarita
to repair the car.  Oscar testified that
appellant did not know about the marijuana in the gas tank because he was not
present when the other three men placed it there a day or two before leaving
Brownsville.  Oscar also testified that
the tail lights on the car were not working when it was being towed.[2]  

            Augustine Ybarra pleaded guilty to
possession of marijuana on charges arising from this incident.  At appellant’s trial, Augustine testified
that only Oscar and Reed were in the car when it broke down in Sarita.  Augustine
testified that he (Augustine) was in Brownsville at the
time, but called appellant, who lived in Matamoros, Mexico, to fix
the car because appellant was a mechanic. 
Augustine said that appellant used his mother’s truck and a rented tow
bar to tow the broken-down car from Sarita to
Pearland.  According to Augustine, he
(Augustine) made certain each time they stopped for fuel that the tail lights
on the towed car were working for safety reasons and to avoid drawing the
attention of the police.  He testified
that the car’s tail lights were working at the time of the traffic stop.  According to Augustine, he bought the car for
the purpose of transporting the narcotics and none of the others knew the
marijuana was in the gas tank.

            Viewing the evidence in the light
most favorable to the verdict, we find sufficient evidence from which a
rational fact finder could have found, beyond a reasonable doubt, that
appellant knowingly possessed the contraband found in the gas tank of the car
he was towing.  Accordingly, we overrule
appellant’s first issue.   

B.        Is the
evidence factually sufficient to support appellant’s conviction?

            In his second issue, appellant
challenges the factual sufficiency of the evidence.  When evaluating such a challenge, we view all
the evidence without the prism of “in the light most favorable to the
prosecution” and set aside the verdict only if it is “so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.”  Johnson v. State, 23 S.W.3d 1, 6–7 (Tex. Crim. App. 2000). 
This concept embraces both “formulations utilized in civil
jurisprudence, i.e., that evidence can be factually insufficient if (1) it is
so weak as to be clearly wrong and manifestly unjust or (2) the adverse finding
is against the great weight and preponderance of the available evidence.”  Id. at
11.  Under this formulation, we
essentially compare the evidence which tends to prove the existence of a fact
with the evidence that tends to disprove that fact.  Jones
v. State, 944 S.W.2d 642, 647 (Tex. Crim. App.
1996).  In conducting the
factual-sufficiency review, we must employ appropriate deference so that we do
not substitute our judgment for that of the fact finder.  Id. at
648.  Our evaluation should not intrude
upon the fact finder’s role as the sole judge of the weight and credibility
given to any witness’s testimony.  Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  In
conducting a factual-sufficiency review, we must consider and address the
appellant’s main argument for a finding of insufficiency.  Sims v.
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 
This practice benefits the parties, maintains the integrity of the
justice system, and improves appellate practice.  Id.  We find the evidence factually insufficient
only when necessary to prevent manifest injustice.  Cain,
958 S.W.2d at 407.

            In support of his
factual-sufficiency challenge, appellant again asserts a lack of affirmative
links between appellant and the marijuana. 
Appellant argues that, taken alone, his presence at the scene is
insufficient to support his conviction. 
Appellant maintains that his brothers’ testimony that appellant believed
there were outstanding warrants for his arrest explains why appellant seemed
nervous and lied to the police about his identity.  

            Although  mere presence in the vicinity of contraband
is insufficient to prove that a person exercised control over the contraband or
was a party to the offense, it is a circumstance tending to prove guilt, which,
when combined with other facts, may suffice to show guilt.  See McGoldrick, 682 S.W.2d at 578; Alvarez v. State, 813 S.W.2d 222, 224 (Tex. App.—Houston [14th Dist.]
1991, pet. ref’d) (recognizing link between narcotics
hidden in tanker and defendant riding in separate car by defendant’s pattern of
counter-surveillance).  As set forth in
the foregoing legal-sufficiency analysis, several factors affirmatively linked
appellant to the marijuana found in the gas tank of the broken-down car.  Appellant’s brothers provided conflicting
testimony, and it was the jury’s duty to determine the credibility of their
testimony and to decide the weight to be given the evidence.  See
Garza v. State, 633 S.W.2d 508, 514 (Tex. Crim.
App. 1981) (opin. on reh’g);
see also Carr v. State, 694 S.W.2d
123, 128 (Tex. App.—Houston [14th Dist.] 1985, pet. ref’d).   Considering the evidence both for and against
a finding of guilt, we cannot conclude the jury’s verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  See
Johnson, 23 S.W.3d at 6–7.  Accordingly, we overrule appellant’s second
issue.

C.        Did
appellant preserve error regarding his third issue?

            In his third issue, appellant
asserts that he was denied a fair and impartial trial because  the State told the jury in its opening
statement that the jury would hear evidence of appellant’s flight to Mexico after
being released on bond.  Appellant argues
that, given the alleged lack of independent evidence affirmatively linking
appellant to the marijuana, this statement denied appellant a fair and
impartial trial.  

            Appellant cites Miller v. State for the standard of review for this issue.  See
Miller v. State, 741 S.W.2d 382, 391 (Tex. Crim.
App. 1987).  This is not the correct
standard of review.  To preserve a
complaint of improper jury argument for appellate review, a party must have
presented to the trial court a timely and specific objection that stated the
specific grounds for the desired ruling.  See Tex.
R. App. P. 33.1(a)(1); Cockrell v.
State, 933 S.W.2d 73, 89 (Tex. Crim. App.
1996).  The Miller case relies on Romo v. State and
related cases.  See id.; Romo v. State, 631 S.W.2d 504 (Tex. Crim. App. 1982).  In
Cockrell v. State, the Court of
Criminal Appeals overruled Montoya v.
State and Romo v. State and any other cases allowing
an exception to normal error-preservation rules for improper and incurable jury
argument. See Cockrell, 933 S.W.2d at
89, overruling Montoya v. State, 744
S.W.2d 15 (Tex. Crim. App. 1987) and Romo v. State, 631 S.W.2d 504 (Tex. Crim. App. 1982). 
For appellant to complain on appeal about erroneous jury argument —
including erroneous argument that was so prejudicial that an instruction to
disregard could not have cured it — appellant must show that he objected at
trial to this argument and that he pursued his objection to an adverse ruling. See Cockrell, 933 S.W.2d at 89; Garcia v. State, 887 S.W.2d 862, 877
(Tex. Crim. App. 1994) (holding that no error was
preserved when appellant did not object to State’s alleged comment during
closing argument on appellant’s failure to testify), abrogated in part on other grounds by Hammock v. State, 46 S.W.3d
889, 892–93 (Tex. Crim. App.2001); Campos v. State, 946 S.W.2d 414, 416–18
(Tex. App.—Houston [14th Dist.] 1997, no pet.). 

            The only objection appellant voiced
at trial was lack of notice the State would use this alleged extraneous offense
under Rule 404(b) of the Texas Rules of Evidence.  See
Tex. R. Evid.
404(b).  On appeal, appellant does not
argue that the trial court abused its discretion by overruling his Rule 404(b)
objection.  Rather, appellant complains
that he was denied a fair and impartial trial based on the State’s assertion
that the jury would hear evidence that appellant fled to Mexico after
being released on bond.  We hold that
appellant did not preserve error as to issue three because his complaint on
appeal does not comport with his objection in the trial court.  See
Guevara v. State, 97 S.W.3d 579, 583
(Tex. Crim. App. 2003) (holding appellant did not
preserve error where appellate complaint was different from trial objection); McFarland v. State, 928 S.W.2d 482, 510
(Tex. Crim. App. 1996) (indicating that preservation-of-error
rules are the same for opening statement and closing argument), limited on other grounds by, Mosley v. State, 983 S.W.2d 249, 263
(Tex. Crim. App. 1998). Accordingly, we overrule
appellant’s third issue.

D.        Was
appellant’s right to a speedy trial violated? 


            In his fourth issue, appellant
argues the State violated his right to a speedy trial under the United
 States and Texas Constitutions.  See U.S. Const. Amends. VI, XIV; Tex.
Const. Art. I, § 10; also Webb v.
State, 36 S.W.3d 164, 172 (Tex. App.—Houston [14th
Dist.] 2000, pet. ref’d) (en banc) (sixth-amendment
right to speedy trial under the federal constitution applies to the states
through the Fourteenth Amendment).  We
balance the same four factors to determine whether a defendant’s right to a
speedy trial has been violated under the federal and state constitutions: (1) the
length of the delay; (2) the reason for the delay; (3) the defendant’s
assertion of the right; and (4) the prejudice to the defendant resulting from
the delay.  See Zamorano v. State, 84 S.W.3d 643, 648
n.12 (Tex. Crim. App. 2002); Webb, 36 S.W.3d at 172.  None
of these factors is a necessary or sufficient condition to finding a speedy-
trial violation.  Zamarano, 84 S.W.3d at 648; Webb, 36 S.W.3d at 172.  Rather, the factors are related and should be
evaluated in conjunction with any other relevant considerations.  Zamarano, 84 S.W.3d at 648; Webb, 36 S.W.3d at 172.  In
assessing a trial court’s ruling on a speedy-trial claim, we apply a bifurcated
standard of review.  Zamarano, 84 S.W.3d at 648; Webb, 36 S.W.3d at 172.  We utilize a de novo standard of review for the legal components and an
abuse-of-discretion standard for the factual components.  Zamarano, 84 S.W.3d at 648; Johnson v. State, 954 S.W.2d 770, 772 (Tex. Crim.
App. 1997); Webb, 36 S.W.3d at 172. 

1.         Length
of the Delay

            The delay is measured from the time
the defendant is formally accused or arrested until the time of trial.  United States v. Marion, 404 U.S. 307, 313,
92 S. Ct. 455, 30 L. Ed.2d 468 (1971); Emery v. State, 881 S.W.2d 702, 708
(Tex. Crim. App. 1994).  We must find this delay presumptively
prejudicial before we inquire into the other three factors.  Barker
v. Wingo, 407 U.S. 514, 530,
92 S. Ct. 2182, 2192, 33 L. Ed.2d 101
(1972); Webb v. State, 36 S.W.3d at 162.  There is, however, no per se length of delay that automatically
constitutes a violation of the right to a speedy trial.  Hull v. State, 699 S.W.2d
220, 221 (Tex. Crim. App. 1985) (en banc). Most
delays of eight months or more are considered presumptively unreasonable and
prejudicial. Marion, 404 U.S. at 313, 92
S. Ct. at 460. 

            In this case, appellant was arrested
on or about May 1,
 1997, and released on bond that same month.  The indictment in this case was not filed
until March of 1998.  Appellant failed to
appear at his arraignment in May of 1998, and bond was forfeited.  The record shows that appellant absconded
during this time period.  In support of
his speedy-trial motion, appellant alleged he was arrested on federal narcotics
charges in east Texas in
February of 2001.  According to
appellant’s motion, appellant was sentenced in April of 2001, in connection
with the federal narcotics charges, and completed his federal sentence in early
October of 2001.  The record indicates
that the State secured a bench warrant, and appellant was transferred to Brazoria County at the
conclusion of his federal sentence, to stand trial in the instant case.  Trial in this case began on April 8, 2002.  The State concedes a five-year delay in
bringing appellant to trial is sufficient to trigger our consideration of the
other three factors.  Because we conclude
the delay in the appellant’s trial is presumptively prejudicial, we address the
remaining three factors.  See Webb, 36 S.W.3d
at 173.

            2.         Reason for the Delay

            The second factor we consider is the
reason for the delay.  See Webb, 36 S.W.3d at 173.  The State has the burden of showing excuse
for the delay, and in the face of a silent record, we presume that there was
not a valid reason for it.  See Emery, 881 S.W.2d at 708; Crowder v. State, 812 S.W.2d 63, 67
(Tex. App.—Houston [14th Dist.] 1991, pet. ref’d).  We consider whether the delay was due to
deliberate attempts to hamper the defense, justified circumstances (such as
missing witnesses), or more neutral reasons (such as overcrowded court
dockets).  Webb, 36 S.W.3d at 173.  A
defendant who has or shares responsibility for the delay may lose his right to
a speedy trial.  See Dickey v. Florida, 398 U.S. 30, 48, 90
S. Ct. 1564, 1574, 26 L. Ed.2d 26 (1970);
Munoz v. State, 991 S.W.2d 818, 822
(Tex. Crim. App. 1999).  Thus, 
we evaluate appellant’s actions and omissions as well as those of the
State.

            Here, appellant’s absconding for
nearly three years (from May of 1998 until April of 2001) accounts for most of
the five-year delay in bringing this case to trial.  This evasion weighs heavily against
appellant.  See Burgett v. State, 865 S.W.2d 594, 598
(Tex. App.—Fort Worth 1993, pet. ref’d) (denying
speedy-trial claim when defendant evaded justice for nearly five years even
though State took six months to bring case to trial after re-arresting
defendant).  The State concedes it cannot
account for the ten-month delay between appellant’s arrest and the issuance of
an indictment.  The State has not justified
its failure to bring appellant to trial while appellant was in federal custody
(from February of 2001 to early October of 2001), which created an additional
seven-month delay.  Nor has the State
explained why six more months elapsed after appellant was transferred from
federal custody to Brazoria County (October
of 2001 until early April of 2002). 
Because the State has the burden of justifying the delay, the 23 months
of unexplained delay weighs heavily against the State in this case.  See
Burton v. State, 805 S.W.2d 564, 572 (Tex. App.—Dallas 1991, pet. ref’d) (weighing unexplained eight-month period of delay
against State, but not finding it dispositive of
speedy-trial claim when appellant absconded for four years).  Though we find this period of substantial
delay is attributable to the State, we must consider it in light of other
circumstances, such as prejudice, to determine whether the delay requires
dismissal of the case.  See U.S. v. Taylor, 487 U.S. 326, 341,
108 S. Ct. 2413, 2422, 101 L. Ed.2d 297
(1988); Burgett,
865 S.W.2d at 597.  

 

 

            3.         Appellant’s Assertion of His Right to a
Speedy Trial

            The third factor we consider is
whether the appellant asserted his right to a speedy trial.  See
Webb, 36 S.W.3d at 173.  A criminal
defendant must assert this right.  Id.  If he does, the
court must give strong evidentiary weight to his assertion.  Crowder, 812 S.W.2d at 67.  However, the reviewing court also must view
these assertions in light of appellant’s other conduct.  U.S. v. Loud Hawk, 474 U.S. 302, 314,
106 S. Ct. 648, 655–56, 88 L. Ed.2d 640
(1986); Burgett,
865 S.W.2d at 598.  In this case,
appellant asked the trial court to appoint counsel in November of  2001, after he was returned to custody in Brazoria County.  That same month, defense counsel was
appointed and first asserted appellant’s right to a speedy trial by filing a
motion to dismiss.  Appellant argues we
should gauge his assertion of the right from the time of the appointment of
counsel.  However, the cases appellant
cites in support of this argument are inapposite because they do not involve a
defendant who fled and thereby avoided prosecution.  See Murray v. Wainwright, 450 F.2d 465, 469 (5th Cir.
1971); Coleman v. U.S., 442 F.2d
150, 155 (D.C. Cir. 1971); U.S. v. Butler, 426 F.2d
1275 (1st Cir. 1975).  The invocation of
the right to a speedy trial is weighed against a defendant who knew of an
indictment and fled the jurisdiction to avoid prosecution.  See
Doggett v. U.S., 505 U.S. 647, 653,
112 S. Ct. 2686, 2691; Burgett, 865 S.W.2d at 598.  Because the trial court is in the best
position to judge the credibility of the evidence, we give considerable
deference to its findings.  See Doggett, 505 U.S. at 653,
112 S. Ct. at 2691; Burgett, 865 S.W.2d at 598.  Here, the trial court denied appellant’s
motion for a speedy trial because it found appellant forfeited bond and
absconded.  This finding is supported by
the record, which shows appellant fled while an indictment was pending.  

4.         Prejudice to Appellant

            Finally, we
consider whether prejudice resulted from the delay.  See
Webb, 36 S.W.3d at 174.  Although the
appellant need not show actual prejudice, he must make a prima facie showing of prejudice. 
Munoz,
991 S.W.2d at 826.  The burden then
shifts to the State to show that prejudice did not exceed that which occurs
from the ordinary and inevitable delay.  Id. In
determining whether appellant suffered prejudice, we consider whether the three
discernable interests which the speedy-trial right was designed to protect were
affected: (1) prevention of oppressive pretrial incarceration; (2) minimization
of the accused’s anxiety and concern; and (3)
limitation of the possibility that the accused’s
defense will be impaired.  Id.  Interference with the third subfactor, though not necessarily dispositive
of a speedy-trial claim, is the most serious because the inability of the
defendant to properly prepare his case jeopardizes the entire fairness of the
trial.  Id.

            In deciding whether the pretrial
incarceration was oppressive, the determinative consideration is the effect the
incarceration has upon the defendant.  Id. at
828.  Incarceration affects a defendant’s
livelihood and family life and enforces idleness.  Barker,
407 U.S. at 532, 92
S. Ct. 2182.  In Munoz,
the Texas Court of Criminal Appeals found a seventeen-month delay inherently
oppressive because the defendant was incarcerated throughout the delay and  the appellate court was bound to defer to the
trial court’s implied finding that the defendant experienced anxiety exceeding
that which ordinarily and inevitably would accompany pretrial
incarceration.  991 S.W.2d at 828. 

            Because appellant was a fugitive
from justice for nearly three years, the period of pretrial incarceration was
limited.  Appellant was in federal
custody for seven months (from February of 2001 until early October of 2001)
and in state custody pending trial for about six months (from early October of
2001 until early April of 2002). 
Appellant argues he was unnecessarily subjected to additional
confinement and anxiety because the State did not commence trial when appellant
was taken into federal custody.  Because
appellant was tried on a federal narcotics charge and served a sentence for
that offense, the entire thirteen months of pretrial incarceration cannot be
attributed to the State in this case.  See Webb,
36 S.W.3d at 174.  Moreover, the record
does not contain evidentiary support for appellant’s “anxiety” and
“additional-confinement” arguments.  See id. at 173.  Accordingly, after evaluating these subfactors, we conclude appellant suffered minimal, if any,
prejudice.  See Munoz, 991 S.W.2d at 829.

            As to the “impairment of defense” subfactor, appellant argues the delay impaired his defense
because the State lost a videotape of the traffic stop between the time of the
indictment and the time of trial. 
Appellant maintains the videotape of appellant towing the car may have
proven the tail lights were working at the time of the traffic stop and that
the officer who pulled him over, therefore, did not have the reasonable suspicion
necessary to justify a traffic stop.  See State v. Cardenas, 36 S.W.3d 243,
246 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d)
(explaining police officer may stop and detain one who commits traffic
violation and discussing scope of detention). 
Appellant, however, did not make this argument in support of his motion
for speedy trial in the court below and therefore has failed to preserve error
as to this complaint.  See Tex.
R. App. P. 33.1(a)(1); Webb v.
State, 36 S.W.3d at 174 n.2 (finding waiver of prejudice argument not made
in the trial court).  Thus, we do not
consider this claim in weighing the impairment, if any, of his defense.   

5.  Balancing the Factors

            We must now
balance the four factors to determine whether appellant was denied his right to
a speedy trial.  Webb, 36 S.W.3d at 175.  On
one hand, the State has failed to explain approximately two years of delay and
has offered little evidence of its diligence in trying appellant’s case.  See
Barker, 407 U.S. at 533–37, 92 S. Ct. at 2193–95 (noting close case but
denying speedy-trial claim when four years of five-year delay unexcused,
defendant did not assert right to speedy trial, and prejudice was
minimal).  On the other hand, appellant
was a fugitive from justice for nearly three years and suffered little or no
prejudice as a result of the delays. 
Though this is a close case, after balancing these factors under the
applicable standard, we find appellant was not denied his right to a speedy
trial.  Accordingly, we overrule
appellant’s fourth issue. 

 

            Having overruled all of appellant’s
issues, we affirm the trial court’s judgment.

                                                                                    

                                                                        /s/        Kem Thompson
Frost

                                                                                    Justice

 

Judgment
rendered and Memorandum Opinion filed September 11, 2003.

Panel
consists of Justices Yates, Hudson, and Frost.

Do
Not Publish — Tex. R. App. P.
47.2(b).

 

 











            [1]  Though the record does not indicate whether
the other occupants of the truck (Oscar, Augustine, and Reed) were mechanics,
testimony from both of appellant’s brothers shows appellant was summoned  to the site of the broken-down car because he
was a mechanic and could repair it, a task the other three men apparently could
not accomplish.





            [2]  Whether the tail lights on the car appellant
was towing were working was a significant fact because the police officer
testified that he initiated the traffic stop because the car being towed did
not have functioning tail lights.