PD-0890-15

PD-0890-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/16/2015 5:06:40 PM
Accepted 7/17/2015 4:05:00 PM
ABEL ACOSTA
CLERK

**PD 15-_____**

In the Court of Criminal Appeals of Texas
At Austin

———————◆———————

No. 01-14-00387-CR

In the Court of Appeals
For the First District of Texas
At Houston

———————◆———————

No. 1391077
In the 179th District Court
Of Harris County, Texas

———————◆———————

FILED IN
COURT OF CRIMINAL APPEALS

July 17, 2015

ABEL ACOSTA, CLERK

**Michael Diaz**
*Appellant*
*v.*
**The State of Texas**
*Appellee*

———————◆———————

**State's Petition for Discretionary Review**

———————◆———————

**Devon Anderson**
District Attorney
Harris County, Texas

**Chelsea Peterson**
**Beth Exley**
Assistant District Attorneys
Harris County, Texas

**Clinton A. Morgan**
Assistant District Attorney
Harris County, Texas
State Bar No. 24071454
morgan_clinton@dao.hctx.net

1201 Franklin St., Suite 600
Houston, Texas 77002
Telephone: 713.755.5826

Oral Argument Requested

## Statement Regarding Oral Argument

The State is asking for a ruling that limits the reach of a recent, valid precedent of this Court in order to avoid an absurd result in this case. Oral argument would allow the Court to better understand how the parties view the advantages and drawbacks of this limitation. Oral argument would serve the important function of allowing the parties to address any of the Court's concerns, either with the State's proposed limitation or with the present rule, that may get overlooked in the briefing.

## Identification of the Parties

Counsel for the State:

Devon Anderson
— District Attorney of Harris County

Chelsea Peterson & Beth Exley
— Assistant District Attorneys at trial

Clinton A. Morgan
— Assistant District Attorney on appeal
1201 Franklin St.
Suite 600
Houston, Texas 77002

Appellant:

Michael Diaz

Counsel for the Appellant:

David Garza
— Counsel at trial
102 S. Lockwood Dr.
Houston, Texas 77011-3124

Terrence A. Gaiser
— Counsel at trial
2900 Smith Street, #220
Houston, Texas 77006

Trial Judge:

Pam Derbyshire
— Presiding judge

# Table of Contents

Statement Regarding Oral Argument ..................................................i

Identification of the Parties .............................................. ii

Table of Contents ................................................................ iii

Index of Authorities .............................................................v

Statement of the Case .......................................................1

Statement of Procedural History ......................................1

## Question Presented

When the State fails to prove the habitual-offender enhancement allegations in the indictment, but the evidence conclusively proves other convictions that would render the appellant eligible for habitual-offender sentencing, is automatic reversal appropriate despite the fact that the appellant will receive the same sentence on remand? ................................................................ 2

I.    Factual and Legal Background ................................................3

A.    The State pled the wrong prior convictions in the enhancement paragraphs. ................................................ 3

B.    The Court of Appeals reversed, based on apparently binding precedent from this Court that the error in this case was not subject to any sort of harm analysis. ........................................ 5

II.   Why This is an Absurd Result. ................................................ 6

A.    The appellant will not benefit from this reversal because on remand the State will file a motion to enhance his punishment with the correct prior convictions. .............................................. 6

B.    Had this error been discovered in the trial court it could have been easily fixed. ................................................................ 7

C.    Had the appellant brought up this error in a habeas proceeding, this Court would have rejected his claim because he was "only fictionally harmed." ................................................ 9

III. Argument: The error in this case was harmless, and a reversal is the sort of absurd result that should be avoided through application of a harm analysis........................................................................ 10

    A. The harm analysis that should apply to this case is categorically different from the harm analysis this Court rejected in *Jordan*, and, despite its overly broad language, *Jordan* should not apply here.......................................................................................... 10

    B. Unlike in *Jordan*, a remand in this case can serve no legitimate function............................................................................... 12

Conclusion ........................................................................................ 17

Certificate of Compliance and Service............................................ 18

Appendix

    *Diaz v. State*, No. 01-14-00387-CR, 2015 WL 3799463 (Tex. App.—Houston [1st Dist.], June 18, 2015) (mem. op. not designated for publication)

# Index of Authorities

**Cases**

*Cooper v. State*
  788 S.W.2d 612 (Tex. App.—
  Houston [1st Dist.] 1990, pet. ref'd) .............................................................. 8, 13

*Diaz v. State*
  No. 01-14-00387-CR, 2015 WL 3799463 (Tex. App.—
  Houston [1st Dist.], June 18, 2015)
  (mem. op. not designated for publication) ...................................................... 1, 6

*Ex Parte Parrott*
  396 S.W.3d 531 (Tex. Crim. App. 2013) ....................................................... 9, 10

*Freda v. State*
  704 S.W.2d 41 (Tex. Crim. App. 1986) ................................................................ 7

*Johnson v. State*
  995 S.W.2d 926 (Tex. App.—
  Waco 1999, no pet.) ............................................................................................ 14

*Jordan v. State*
  256 S.W.3d 26 (Tex. Crim. App. 2008) ..................................................... passim

*Pelache v. State*
  324 S.W.3d 568 (Tex. Crim. App. 2010) ....................................................... 8, 13

*Plessinger v. State*
  536 S.W.2d 380 (Tex. Crim. App. 1976) ....................................................... 8, 13

*Roberson v. State*
  420 S.W.3d 832 (Tex. Crim. App. 2013) ............................................................. 7

*Rooks v. State*
  576 S.W.2d 615 (Tex. Crim. App. 1978) (panel op.) .......................................... 8

*Saldana v. State*
  826 S.W.2d 948 (Tex. Crim. App. 1992) ........................................................... 14

*Tomlin v. State*
  722 S.W.2d 702 (Tex. Crim. App. 1987) ............................................................. 3

## Statutes

TEX. PENAL CODE § 12.42.................................................................................. 3

## Other Authorities

George E. Dix & John M. Schmolesky
   43A Tex. Prac., Criminal Practice and Procedure § 46:107 (3d ed.) .... 13

## Statement of the Case

The appellant was indicted for burglary of a habitation. (CR 9). The indictment alleged two prior felony convictions, one for an offense that was committed after the other conviction became final. (CR 9). The appellant waived his right to a jury trial and pled not guilty to the trial court. (2 RR 6-7). The trial court found him guilty as charged. (2 RR 101; CR 30). The appellant pled true to both enhancement allegations. (2 RR 102; CR 30). The trial court found both allegations true and assessed punishment at thirty years' confinement. (2 RR 107; CR 30). The trial court certified the appellant's right of appeal, and the appellant filed a notice of appeal. (CR 4, 8).

## Statement of Procedural History

On June 18, 2015, a panel of the First Court of Appeals issued a memorandum opinion affirming the appellant's conviction but reversing on punishment because the evidence showed that the enhancement allegations did not occur in the order alleged. *Diaz v. State*, No. 01-14-00387-CR, 2015 WL 3799463 (Tex. App.—Houston [1st Dist.], June 18, 2015) (mem. op. not designated for publication). No motions for rehearing were filed.

1

## Question Presented

**When the State fails to prove the habitual-offender enhancement allegations in the indictment, but the evidence conclusively proves other convictions that would render the appellant eligible for habitual-offender sentencing, is automatic reversal appropriate despite the fact that the appellant will receive the same sentence on remand?**

The Court of Appeals reversed the appellant's sentence because the State failed to prove the enhancement allegations in the indictment. However, if the case goes back to the trial court the State will be able to file a motion to enhance the appellant's sentence with other felony convictions, convictions to which the appellant has already stipulated and that were admitted into evidence. The appellant will then be subject to the exact same punishment range as he was the first time. Thus the appellant has gained a reversal from an error that did not harm him, and a remand from which he cannot benefit.

While the State believes this reversal is a wasteful absurdity, the Court of Appeals's opinion is a seemingly correct application of some very broad language from *Jordan v. State*, 256 S.W.3d 286 (Tex. Crim. App. 2008). Without questioning the fundamental correctness of *Jordan*, the State asks this Court to distinguish *Jordan* to avoid the silly result in this case and to prevent gamesmanship in similar cases.

2

## I.  Factual and Legal Background

### A. The State pled the wrong prior convictions in the enhancement paragraphs.

The indictment in this case alleged that in 2008 the appellant was convicted of felony possession of a controlled substance, and that after that conviction became final he committed and was convicted of felony burglary of a habitation in 2009. (CR 9). If true, these allegations would render the appellant subject to punishment as a true habitual offender with a punishment range of confinement for 25 to 99 years, or life. *See* TEX. PENAL CODE § 12.42(d).[1]

The appellant pleaded true to these allegations, and he entered a stipulation to five prior felony convictions (two of which were state-jail felonies, and thus not relevant to enhancing his punishment in this case). (State's Ex. 22). However, the judgments for the two cases alleged in the enhancement paragraphs show that the prior burglary conviction was for an offense committed prior to the PCS conviction becoming final in 2008.

---

[1] To prove a defendant's status as a true habitual, the evidence must show two prior felony convictions that occurred in a particular chronological order: "(1) the first conviction becomes final; (2) the offense leading to a later conviction is committed; (3) the later conviction becomes final; (4) the offense for which defendant presently stands accused is committed." *Tomlin v. State*, 722 S.W.2d 702, 705 (Tex. Crim. App. 1987).

3

**Prior Convictions Alleged in Indictment**

| Offense | Cause Number | Date of Offense | Date of Conviction |
|---------|--------------|-----------------|--------------------|
| PCS | 1154681 | 2/21/2008 | 3/26/2008 |
| Burglary | 1174687 | 7/8/2007 | 6/11/2009 |

(State's Ex. 24).

Using those convictions, sentencing the appellant as a true habitual would be inappropriate. However, if one looks at all the convictions to which the appellant stipulated (and for which the State admitted certified judgments), it is apparent that the State could have pled prior convictions that would have properly established the appellant as a true habitual.

**Second and Third Degree Felonies to Which the Appellant Stipulated**

| Offense | Cause Number | Date of Offense | Date of Conviction |
|---------|--------------|-----------------|--------------------|
| PCS | 1259219 | 4/14/2010 | 4/19/2010 |
| PCS | 1154681 | 2/21/2008 | 3/26/2008 |
| Burglary | 1174687 | 7/8/2007 | 6/11/2009 |

(State's Exs. 22, 23, 24). Had the indictment alleged the 2010 conviction in conjunction with either of the other two, it would have properly established the appellant as a true habitual.

4

**B. The Court of Appeals reversed, based on apparently binding precedent from this Court that the error in this case was not subject to any sort of harm analysis.**

In the Court of Appeals, the appellant's only complaint consisted of a one-page argument pointing out that the prior convictions alleged in the indictment did not occur in sequential order. (*See* Appellant's Brief at 9). Citing to *Jordan v. State*, 256 S.W.3d 26 (Tex. Crim. App. 2008), the appellant asked for a new punishment hearing.

*Jordan* was another case involving sequence issues with habitual-offender enhancements. In that case, the State's evidence did not show the date on which the second offense was committed, thus the evidence was insufficient to prove that it was committed after the first conviction became final. *Jordan*, 256 S.W.3d at 289.

On appeal, the State asked the Court of Appeals to apply a harm analysis because Jordan's life sentence was within the appropriate statutory range to which Jordan would have been subject without the finding that he was a true habitual. *Id*. at 290. This Court held that the State's failure to prove the sequence of habitual-offender enhancement allegations was error not subject to a harm analysis. *Id*. at 292. To emphasize its point that automatic reversal was required, this Court noted that even if such a finding were subject to a harm analysis, "the

5

State's failure to prove the chronological sequence of punishment enhancement allegations as required under [Penal Code] Section 12.42(d) … will never be considered harmless." *Ibid*.

In this case, the State conceded that the Court of Appeals was bound by the strong, categorical language in *Jordan* and the Court of Appeals agreed. *Diaz v. State*, No. 01-14-00387-CR, 2015 WL 3799463 at *3 (Tex. App.—Houston [1st Dist.] June 18, 2015); *see also Jordan*, 256 S.W.3d at 287 ("We hold that the court of appeals properly rejected the State's contention that a harm analysis is appropriate.").

## II. Why This is an Absurd Result

The State does not challenge the fundamental correctness of *Jordan*. However, as applied to this case, *Jordan* has created a truly absurd result.

### A. The appellant will not benefit from this reversal because on remand the State will file a motion to enhance his punishment with the correct prior convictions.

It is typically the case that winning on appeal will help a criminal defendant in a fairly obvious manner. That is not the case here. Indeed, it is hard to imagine how the reversal in this case will help the appellant unless he enjoys repetitive court proceedings.

The Double Jeopardy prohibition does not bar the re-use of prior convictions in a second punishment hearing. *See Jordan*, 256 S.W.3d 291. Therefore, if this case is remanded to the trial court the State will be able to enhance the appellant's sentence using the 2010 conviction in conjunction with one of the appellant's other felony convictions, and then the evidence will adequately support his punishment as a true habitual. Unless the appellant has misbehaved while in prison (in which case his punishment can be increased), he will surely receive the same sentence.

### B. Had this error been discovered in the trial court it could have been easily fixed.

Applying *Jordan's* rule of automatic reversal to this case is incongruous with this court's prior holdings that, so long as the defendant has notice of the State's intent to enhance his sentence, the details of those prior convictions that make it into the indictment are not terribly important. *See Roberson v. State*, 420 S.W.3d 832, 840 (Tex. Crim. App. 2013) (evidence sufficient to show habitual status despite fact that enhancement paragraphs alleged in wrong order); *see also Freda v. State*, 704 S.W.2d 41, 43 (Tex. Crim. App. 1986) (incorrect name for prior offense used in enhancement allegation immaterial); *Rooks v.*

7

*State*, 576 S.W.2d 615, 616-17 (Tex. Crim. App. 1978) (panel op.) (variance regarding court of conviction was not material); *Plessinger v. State*, 536 S.W.2d 380, 381-82 (Tex. Crim. App. 1976) (difference between pleading that prior conviction was named "State of Texas v. [defendant]" and proof that prior conviction was named "State of Arizona v. [defendant]" immaterial).

In this case, the State gave pre-trial notice of its intent to introduce evidence of the 2010 conviction. (CR 23). Therefore, had this error been pointed out in the trial court, the State could have simply filed a motion to enhance the appellant's sentence using the 2010 conviction, even after trial started and even if the appellant objected. *See Pelache v. State*, 324 S.W.3d 568, 577 (Tex. Crim. App. 2010). The Court of Appeals has still-valid precedent holding that it is, at worst, harmless error to allow the State to correct an error in an enhancement paragraph in the middle of trial over the defendant's objection. *See Cooper v. State*, 788 S.W.2d 612, 616 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd).

**C. Had the appellant brought up this error in a habeas proceeding, this Court would have rejected his claim because he was "only fictionally harmed."**

In *Ex parte Parrott*, this Court dealt with a case that was factually similar to this case, but which came up in the context of an 11.07 habeas writ. Parrott pleaded guilty to a third-degree felony, with the punishment enhanced by a prior felony conviction. *Ex Parte Parrott*, 396 S.W.3d 531, 533 (Tex. Crim. App. 2013). After his conviction became final, Parrott filed an 11.07 petition noting that the conviction used to enhance his punishment was actually a state-jail felony, thus it could not be used to enhance punishment. *Ibid.*

The record in *Parrott*, like the record in this case, showed additional felony convictions that could have been used in lieu of the inappropriate enhancement. *Id.* at 533-34. In *Parrott*, this Court recognized that if relief were granted, at a new punishment hearing the State would be able to use those other convictions to enhance Parrott's sentence to the exact same degree as it had been enhanced the first time, thus "relief would serve only to provide [Parrot] an additional opportunity to contest prior convictions that the trial court ... has

9

already determined to be valid."[2] *Id.* at 538. This Court denied relief, deeming habeas relief inappropriate for an applicant who had been "only fictionally harmed." *Ibid.*

III. **Argument: The error in this case was harmless, and a reversal is the sort of absurd result that should be avoided through application of a harm analysis.**

The State believes that the evidence shows, beyond any doubt, that the error in this case was harmless, and that applying the *Jordan* rule of automatic reversal creates an absurd result. Upon close analysis, it is clear that this Court's concerns in *Jordan* are not applicable to this case. Also unlike *Jordan*, a remand in this case can serve no legitimate function.

A. **The harm analysis that should apply to this case is categorically different from the harm analysis this Court rejected in *Jordan*, and, despite its overly broad language, *Jordan* should not apply here.**

In *Jordan*, this Court broke down the sentencing process into two parts. *Jordan*, 256 S.W.3d at 293. First, there is the factfinder's determination of historical fact, namely whether the enhancement

---

[2] In Parrott's habeas proceedings, the trial court had made a finding that the prior convictions were valid. There is no such finding from the trial court in this case; however, the appellant stipulated to the relevant convictions, thus he would be estopped from contesting them on remand. If anything, then, a remand in this case would be marginally more pointless than in *Parrott*.

allegations are true. That determination sets the punishment range. The factfinder then makes a normative determination of what punishment to assess from within that range.

The error in *Jordan* was that there was insufficient evidence to support the jury's findings of historical fact, and this led them to select an incorrect punishment range from which to make the normative decision. The State's argument on appeal was that the error was harmless because the normative decision that the jury made would have been allowable had the jury been assessing punishment based on the correct range. Essentially, the State was using the jury's determination from the second part of the sentencing process to show that the error in the first part of the sentencing process was harmless. This Court rejected that argument because, given the "absence of discrete, objective facts decided by the jury" in the second part of the sentencing process, it was impossible to calculate the effect of using the incorrect range, thus it could not be said that the error in the first part of the sentencing process was harmless. *Ibid*.

In this case, the error relates to the first part of the sentencing process, but so does the evidence that the error was harmless. The total evidence at trial conclusively shows that the appellant *is* a true habitual,

even if the State's pleading did not. Thus, the trial court, in assessing punishment in the second part of the sentencing process, used the correct punishment range.

The *Jordan* court's problem with using the determination from the second part of the process as a basis for holding harmless an error in the first part of the process was based on the subjective, normative nature of the second determination. That is not an issue in this case. The objective facts show that the finding that the appellant was a true habitual was correct. Despite *Jordan's* broad language that would appear to make its holding applicable to this case, the reasoning of *Jordan* does not apply to this case at all.

The State believes the Court of Appeals was bound by *Jordan* because of its overly broad language. This Court, however, should use this case to show that *Jordan's* holding does not extend beyond the bounds of its reasoning.

### B. Unlike in *Jordan*, a remand in this case can serve no legitimate function.

The State's ability, as recognized in the case law, to make mid-trial corrections to errors in the pleading of enhancement allegations has created a system where defendants have little, if any, incentive to point

12

out pleading errors in the trial courts. *See, e.g., Cooper,* 788 S.W.2d at 616 (allowing State to amend enhancement paragraph over defense objection was, at worst, harmless error); *Pelache*, 324 S.W.3d at 577 (allowing State to file mid-trial motion to enhance sentence). Indeed, the low chance of reversal based on pleading errors in enhancement paragraphs means that, so long as the generalities of the pleading are correct the parties are likely to pay little attention to minor errors. *See* George E. Dix & John M. Schmolesky, 43A Tex. Prac., Criminal Practice and Procedure § 46:107 (3d ed.) ("No case after [*Plessinger v. State*, 536 S.W.2d 380 (Tex. Crim. App. 1976)] has determined that a variance between the allegations of a prior conviction and its proof is fatal."). Given the present habits of trial attorneys on both sides, applying a rule of automatic reversal in this case creates an opportunity for gamesmanship.

This case provides a good example of how the current state of affairs works. The indictment gave the appellant notice that the State was seeking to punish him as a true habitual, and the State's notice of intent to introduce extraneous offenses put him on notice that the State would introduce evidence of enough second- and third-degree felonies to prove that he was a true habitual. (*See* CR 22). Had defense counsel

13

pointed out the State's pleading error in the trial court, the State could have immediately corrected it and the defense would have gained nothing. In the absence of defense counsel complaining about the pleadings in the indictment, the prosecutor probably presumed everything was in order.

Given the rule of automatic reversal, a wily defense attorney could easily game the system and give his client two bites at the punishment apple. Having noticed the error, the wily defense lawyer would proceed to punishment as though nothing were wrong. If he were reasonably satisfied with the punishment verdict, he would continue to keep quiet on appeal. If he disliked the verdict, however, he would raise the matter, obtain an automatic reversal, and opt for a different factfinder on remand. *See Johnson v. State*, 995 S.W.2d 926, 929 (Tex. App.—Waco 1999, no pet.) (citing *Saldana v. State*, 826 S.W.2d 948 (Tex. Crim. App. 1992)) (defendant entitled to have jury assess punishment on remand despite fact that trial court assessed punishment at original trial). Or, had he opted for a jury the first time, he could opt for a jury a second time and hope for a friendlier panel and a less compelling presentation of the State's punishment evidence.

14

The State will grant that such a defendant will still be facing at least 25 years even after playing such a game, which might seem like a very low level of winning. But if a defendant has been assessed a punishment of 75 years or life by a trial court and then gets that sentence reduced to 40 years on remand to a jury, he will have bumped up his parole eligibility by ten years and given himself a chance to discharge his sentence before his dotage. And he will have done so based not on any unfairness in the original proceeding or any incorrectness in the original sentence, but on what amounts to little more than a typo.

In *Jordan*, the State failed to prove that the defendant committed one felony after the conviction in another felony become final. On the appellate record, this Court could not determine with any confidence whether on remand the State could prove that Jordan was a true habitual. *Jordan* was a case where it was altogether possible that the trial attorneys had overlooked an actual failing in the State's evidence and a remand would create a different, more lawful result, with the possibility of Jordan receiving a sentence (as little as 15 years) that was below the minimum he could have received in his first punishment hearing. In this case, without the State introducing additional evidence,

the appellant will be subject to the exact same range of punishment as the first time, and the factfinder will be aware of the exact same prior convictions as the first time. If the appellant receives a different punishment on remand it will be due to luck or caprice, and his new sentence will be not one whit more lawful.

To be clear, the State is not alleging that the appellant or either of his attorneys has played a game in this case. The appellant received a sentence of 30 years. Considering that 25 is the minimum he will face on remand, a prudent man would return to the judge for punishment in order to receive the same sentence. This should serve to emphasize how unfortunate it is to apply a rule of automatic reversal to the error in this case: Either it creates an opportunity for a defendant to game the system, or it creates an utterly pointless remand, but in no circumstance does it create a more just result.

## Conclusion

The State asks this Court to grant discretionary review and hold that the *Jordan* rule of automatic reversal does not apply when the evidence conclusively shows that the factfinder selected a sentence from the correct punishment range.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ C.A. Morgan
**CLINTON A. MORGAN**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
713.755.5826
Texas Bar No. 24071454

## Certificate of Compliance and Service

I certify that, according to Microsoft Word's word counting function, the portion of this brief for which Rule of Appellate Procedure 9.4(i)(1) requires a word count contains 3,147 words.

I also certify that I have requested that efile.txcourts.gov electronically serve a copy of this brief to:

Terrence A. Gaiser
tagaiser@aol.com

Lisa McMinn
State Prosecuting Attorney
information@spa.texas.gov

/s/ C.A. Morgan
**CLINTON A. MORGAN**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002-1923
(713) 755-5826
Texas Bar No. 24071454

Date: July 16, 2015

# Appendix

*Diaz v. State*, No. 01-14-00387-CR, 2015 WL 3799463 (Tex. App.—Houston [1st Dist.], June 18, 2015) (mem. op. not designated for publication)

**Opinion issued June 18, 2015**



In The

# Court of Appeals

For The

# First District of Texas

—————————————————

## NO. 01-14-00387-CR

—————————————————

## MICHAEL DIAZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 179th District Court
Harris County, Texas
Trial Court Case No. 1391077

## MEMORANDUM OPINION

Appellant Michael Diaz was charged with burglary of a habitation, with two

paragraphs alleging sequential conviction of two previous felonies enhancing the

punishment range to that of a habitual offender. Diaz waived his right to a trial by

jury and entered a plea of not guilty. After trial to the bench, the trial court found

Diaz guilty of burglary. Diaz pleaded true to the habitual offender enhancements, and the trial court found the enhancements true and assessed his punishment at 30 years' confinement. On appeal, Diaz argues that the evidence is insufficient to prove that the second enhancement paragraph was true, and thus habitual offender enhancement was improper and he is entitled to a new punishment hearing. We agree. We affirm Diaz's conviction, but reverse the portion of the judgment assessing punishment and remand for a new punishment hearing.

## Background

On June 10, 2013, complainants Delores and Rudy Castillo left their house for work around 7:00 a.m. At 8:15 a.m., Delores received a phone call from their home alarm security company informing her that the security system had detected motion in their house. She called Rudy, who drove to the house and found that police had already arrived. The back door of the house had been kicked in, and various items had been taken, including a 55-inch television, jewelry, and a Bible.

Lieutenant J. Pedraza of the Harris County Constable's Office Precinct 6 was dispatched around noon to a pawn shop. A pawn shop employee had called the police because two men who were trying to pawn some items were behaving suspiciously. Pedraza located the men's truck and found Anthony Sustaita asleep in the passenger seat. Pedraza observed a keyboard, televisions, and a tall jewelry box in the truck.

Pedraza asked Sustaita about the items, and Sustaita told Pedraza that he was waiting for his boss who was inside the pawn shop. Pedraza went inside and found Diaz, who gave Pedraza a fake name. Pedraza detained Diaz and, after several Houston Police Department officers arrived, the officers searched the truck and found, among other things, the Bible that had been taken from the Castillos' house that morning.

Officer M. Hinojosa of the Houston Police Department took Diaz's custodial statement. Diaz was given his statutory warnings, waived his rights, and agreed to talk to Hinojosa. Diaz confessed to burglarizing the Castillos' house in a recorded statement.

After the trial court found Diaz guilty of the burglary, Diaz pleaded true to the indictment's two enhancement paragraphs:

> Before the commission of the offense alleged above, (hereafter styled the primary offense), on MARCH 26th, 2008, in Cause No. 1154681 in the 232ND DISTRICT COURT of HARRIS County, Texas, the defendant was convicted of the felony of POSSESSION OF A CONTROLLED SUBSTANCE.
>
> Before the commission of the primary offense and after the conviction in Cause No. 1154681 was final, the Defendant committed the felony of BURGLARY OF A HABITATION and was finally convicted of that offense on JUNE 11, 2009, in Cause No. 1174687, in the 232ND DISTRICT COURT of HARRIS County, Texas.

The trial court admitted Diaz's signed stipulation of evidence and copies of the judgments reflecting the two prior convictions.[1] The trial court found the enhancements true and assessed punishment at 30 years' confinement.

## Discussion

In his sole issue on appeal, Diaz argues that he is entitled to a new punishment hearing because the evidence does not support the trial court's finding of true regarding the second enhancement paragraph.

### A. Standard of Review

A defendant may challenge the legal sufficiency of the evidence supporting a finding that an enhancement paragraph is true, even if the appellant pleaded true to the enhancement at the punishment hearing. *See Jordan v. State*, 256 S.W.3d 286, 292 (Tex. Crim. App. 2008) (finding that enhancement paragraph is true is subject to legal sufficiency review); *Mikel v. State*, 167 S.W.3d 556, 560 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (appellant could challenge sufficiency of evidence supporting finding that enhancement paragraph was true despite plea of true to paragraph at punishment hearing). In reviewing such a finding, we view the evidence in a light most favorable to the trial court's ruling and determine whether any rational trier of fact could make the finding beyond a reasonable

---

[1] Diaz also stipulated to the commission of a third felony and two state jail felonies, and judgments reflecting these convictions were also admitted.

doubt. *Mikel*, 167 S.W.3d at 560 (citing *McFarland v. State*, 928 S.W.2d 482, 496 (Tex. Crim. App. 1996)).

**B.      Applicable Law**

The primary offense in this case, burglary of a habitation, is a second degree felony. *See* TEX. PENAL CODE ANN. § 30.02(c)(2) (West 2011) (burglary of a habitation is a second degree felony). A second degree felony is punishable by a prison term of 2 to 20 years. *See id*. § 12.33(a) (West 2011). A second degree felony may be enhanced and punished as a first degree felony, with a prison term of 5 to 99 years or life, if it is shown at trial that the defendant has been previously finally convicted of a felony other than a state jail felony. *See id*. § 12.32(a) (West 2011) (first degree felony is punishable by imprisonment for 5 to 99 years or life), § 12.42(b) (West 2011) (second degree felony is punishable as first degree felony if it is shown at trial that defendant has been previously finally convicted of a felony other than a state jail felony). But if a non-state jail felony defendant has previously been finally convicted of two non-state jail felonies, and the second conviction is for an offense that was committed after the first conviction became final, then the Texas Penal Code provides that the defendant may be punished as a habitual offender. *See id*. § 12.42(d) (West 2011). In this case, the range of punishment is enhanced to 25 to 99 years or life in prison. *Id.* To support habitual offender enhancement, "'[t]he [chronological] sequence of events must be proved

5

as follows: (1) the first conviction becomes final; (2) the offense leading to a later conviction is committed; (3) the later conviction becomes final; (4) the offense for which defendant presently stands accused is committed.'" *Jordan*, 256 S.W.3d at 290–91 (quoting *Tomlin v. State*, 722 S.W.2d 702, 705 (Tex. Crim. App. 1987)).

Where "the record affirmatively reflects that [an offense] should not have been used to enhance [the] punishment range to that of an habitual offender because the offense did not occur in the sequence alleged by the indictment," the evidence is insufficient to support the habitual offender enhancement even if the appellant pleaded true to the enhancement. *Mikel*, 167 S.W.3d at 559–60 (citing *Cruz v. State*, No. 01–00–00463–CR, 2001 WL 1168273, at *1 (Tex. App.— Houston [1st Dist.] Oct. 4, 2001, no pet.) (not designated for publication)).

The State bears the burden of proving beyond a reasonable doubt that a defendant's second previous felony conviction was committed after the defendant's first previous felony conviction became final. *Jordan*, 256 S.W.3d at 291. Where the State fails to meet this burden, "[a] harmless error analysis should not be undertaken" and the case should be remanded for a new punishment hearing. *Id.* (citing and quoting *Russell v. State*, 790 S.W.2d 655, 656 (Tex. Crim. App. 1990)); *see also Mikel*, 167 S.W.3d at 560 (holding harm analysis inappropriate where evidence is insufficient to support findings of true to habitual offender enhancements). This is so because "there is no way to quantify what

impact the unsupported finding of true had on the [factfinder's] normative sentencing function," and thus, "any attempt to calculate [the impact] would necessarily entail pure speculation." *Jordan*, 256 S.W.3d at 293. "Under these circumstances, the State's failure to meet its burden of proof, even if subjected to a harm analysis, can never be deemed harmless." *Id.*

## C. Analysis

Diaz asserts, and the State concedes, that the record affirmatively reflects that Diaz committed the offense alleged in the second enhancement paragraph before the conviction for the offense alleged in the first enhancement paragraph became final. Diaz was convicted of the first felony enhancement in Cause No. 1154681 on March 26, 2008, according to the judgment that was admitted into evidence at the punishment hearing. The second enhancement paragraph alleged:

> Before the commission of the primary offense and after the conviction in Cause No. 1154681 was final, the Defendant committed the felony of BURGLARY OF A HABITATION and was finally convicted of that offense on JUNE 11, 2009, in Cause No. 1174687, in the 232ND DISTRICT COURT of HARRIS County, Texas.

But according to the judgment in Cause No. 1174687, which was also admitted into evidence during the punishment hearing, the offense was actually committed on July 8, 2007, over six months *before* Diaz was convicted of the offense in Cause No. 1154681. Thus, the offense in Cause No. 1174687 was not committed "after the conviction in Cause No. 1154681 was final." Accordingly, "the record

7

affirmatively reflects that [the second felony offense alleged] should not have been used to enhance [the] punishment range to that of an habitual offender because the offense did not occur in the sequence alleged by the indictment." *Mikel*, 167 S.W.3d at 559.

Diaz and the State agree that the Court of Criminal Appeals has held that "[a] harmless error analysis should not be undertaken" where, as here, the State fails to meet its burden of showing that a defendant is eligible for habitual offender enhancement. *Jordan*, 256 S.W.3d at 291 (citing and quoting *Russell*, 790 S.W.3d at 656); *see also Mikel*, 167 S.W.3d at 560 (holding that harm analysis is inappropriate where record shows that second enhancement paragraph should not have been used to enhance punishment to habitual offender range). This is because the State's failure to meet its burden "can never be deemed harmless." *Jordan*, 256 S.W.3d at 293. The State concedes that we are bound by this precedent, but complains that this rule results in the waste of judicial resources where, as here, there is evidence in the record that the appellant has committed other felonies that could have properly been used to enhance the punishment range to that of a habitual offender.

Here, a judgment admitted into evidence during the punishment hearing shows that Diaz committed a third non-state jail felony in 2010 and was convicted of that charge that same year. Thus, the State could have properly enhanced the

punishment range to that of a habitual offender if it had alleged the 2010 felony as the second enhancement offense.

The State argues that if Diaz had raised this issue at trial, it could have moved to amend the enhancement paragraphs to allege the proper enhancements. *See Pelache v. State*, 324 S.W.3d 568, 577 (Tex. Crim. App. 2010) (holding that State's motion to enhance punishment filed two days before punishment phase of trial gave sufficient notice of enhancement and did not violate due process where defendant did not request continuance, appear surprised by prior conviction allegations, or argue that he was unprepared to defend against allegations); *Villescas v. State*, 189 S.W.3d 290, 294 (Tex. Crim. App. 2006) ("[W]hen a defendant has no defense to the enhancement allegation and has not suggested the need for a continuance in order to prepare one, notice given at the beginning of the punishment phase satisfies the federal constitution."). The State also notes that under *Ex parte Parrott*, 396 S.W.3d 531 (Tex. Crim. App. 2013), if Diaz raised this claim in a writ of habeas corpus instead of on direct appeal, the Court of Criminal Appeals would deny relief because he would be unable to show harm sufficient to warrant the grant of writ relief. *See id.* at 538 (holding that where habeas record revealed valid alternative prior convictions that supported applicant's enhanced sentence, applicant failed to establish harm sufficient to warrant grant of writ relief).

Nevertheless, whether the State could have properly alleged habitual offender enhancement, it is undisputed that it did not actually do so. And whether an error may warrant habeas corpus relief is a separate question from the issue we must resolve here, which is whether we should undertake a harm analysis when this issue is raised on direct appeal. The Court of Criminal Appeals has explicitly held that we "should not" undertake a harm analysis in these circumstances and that the State's failure to meet its evidentiary burden with respect to habitual offender enhancement "can never be deemed harmless." *Jordan*, 256 S.W.3d at 291, 293. Thus, we hold that the evidence is insufficient to support the trial court's finding of true with respect to the second enhancement and the imposition of punishment as a habitual offender. *See Jordan*, 256 S.W.3d at 291; *see also Mikel*, 167 S.W.3d at 560. Accordingly, we will reverse the portion of the judgment assessing punishment and remand for a new punishment hearing. *See Mikel*, 167 S.W.3d at 560 (reversing portion of judgment assessing punishment and remanding for new punishment hearing where record affirmatively reflected that offense in second enhancement paragraph did not occur before offense in first enhancement paragraph was final and therefore punishment as habitual offender was improper).

We sustain Diaz's sole issue.

## Conclusion

We affirm the trial court's judgment as to guilt, reverse the judgment as to punishment, and remand for a new punishment hearing.

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).